**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN DOE AND BOBBI PISOR,** | : |
| | : |
| | : |
| *Plaintiffs*, | :  No. 2:25-cv-01691-WB |
| v. | : |
| | : |
| **AMERICA PAC; GROUP AMERICA,** | : |
| **LLC; AND ELON MUSK** | : |
| | : |
| *Defendants*. | : |
| | : |

<u>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**</u>

## Table of Contents

I.    Introduction ................................................................................................... 1

II.   Factual Background ........................................................................................ 2

    a.    The Parties .............................................................................................. 2

    b.    America PAC's Citizen Petition Program .................................................. 4

III.  Argument and Authority ................................................................................ 5

    a.    Thise case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction .......................................................... 5

        i.    Standard for dismissal under Rule 12(b)(1) ...................................... 5

        ii.   Plaintiffs have not pled any injury-in-fact traceable to any Defendant. .............. 7

        iii.  Musk and Group America should be dismissed as Defendants because Plaintiffs have not alleged *any* relevant activity by these Defendants *whatsoever*. ................... 10

        iv.   Plaintiffs lack standing to sue for alleged nonpayments to petition signers. ...... 11

    b.    Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a plausible legal claim. ....................................................................... 12

        i.    Standard for dismissal under 12(b)(6) ............................................. 12

        ii.   Plaintiffs fail to state a breach of contract claim against any Defendant. .......... 13

        iii.  Plaintiffs fail to state a plausible promissory estoppel claim. .......................... 16

    c.    Doe has not pled a plausible WPCL claim. ............................................. 17

        i.    Doe has not pled an employer-employee relationship with any Defendant. ...... 18

        ii.   The alleged unpaid referral fees do not constitute "wages" under the WPCL. . 23

IV.   Conclusion ................................................................................................... 25

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 14, 21

*Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997) ..................................................................... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 14, 16, 21

*Bohler-Uddelholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2011) ..................... 15

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Pa. Super. 2011) ........................................... 25, 26

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .................................................. 15

*Cephas v. George W. Hill Corr. Facility*, No. CIV.A. 09-6014, 2011 WL 2695311 (E.D. Pa. July 12, 2011) ................................................................................................................ 16

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................................... 13

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ............................................... 14, 17

*Crouse v. Cyclops Indus.*, 745 A.2d 606 (Pa. 2000) ............................................................... 18

*Dabronzo v. Roche Vitamins*, 232 F. Supp. 2d 306 (D.N.J. 2002) ........................................... 20

*Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 3992960 (M.D. Pa. Sept. 4, 2012) ...... 21

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016) .................................... 8, 11, 13

*Food Team Int'l, Ltd. v. Unilink, LLC*, 2013 WL 5476582 (E.D.Pa. Sept. 30, 2013) ................. 15

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ...................................................... 15, 17

*Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167 (2000) .......................... 8

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ............................................................... 8

*George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226 (3d Cir. 2024) .......................................... 7

*Green v. Golla Ctr. for Plastic Surgery, P.C.*, No. 2:18-CV-00034, 2019 WL 1083688 (W.D. Pa. Mar. 7, 2019) ......................................................................................................... 20, 24

*In re Corestates Trust Fee Litig.*, 837 F.Supp. 104 (E.D. Pa. 1993) ........................................... 7

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ........................................................................................................................ 11

*Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59 (Pa. Super. 2000) ........................................ 25, 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 8

*Mohney v. McClure*, 568 A.2d 682 (Pa. Super. 1990) ............................................................. 21

*Morin v. Brassington*, 871 A.2d 844 (Pa. Super. 2005) ........................................... 20, 21, 23, 24

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................................... 9, 13

*Paws v. U.S. Dep't of Agric. Animal & Plant Health Inspection Serv.*, No. CIV.A. 95-4719, 1996 WL 524333 (E.D. Pa. Sept. 9, 1996) ............................................................................. 10

*Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 641 F. App'x 181 (3d Cir. 2016) .......................................................................................................................... 7

*Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577 (E.D. Pa. 1985) ............................................ 25, 26

*Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) ............................................. 9, 13

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................. 8, 11, 12

*Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793 (3d Cir. 2010) ......................................... 20

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. 2005) ................................. 18

*Tomlinson v. Checkpoint Sys., Inc.*, No. CIV.A. 06-2205, 2008 WL 219217 (E.D. Pa. Jan. 25, 2008) ...................................................................................................................... 20, 22

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................................................................. 8

*V-Tech Servs., Inc.*, 72 A.3d at 276; *see also Pandit v. Temple Univ.*, 2025 WL 388818 (E.D. Pa. 2025) .......................................................................................................................... 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................. 13
*Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir. 1990) ............................................. 25
*Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314 (3d Cir. 2016).......... 20, 21, 24
*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022) ............. 8, 11, 12

**Statutes**
43 P.S. § 260.1 ..................................................................................................... 20

**Rules**
Federal Rule of Civil Procedure 12 ...................................................................... 7
Federal Rule of Civil Procedure 8 ........................................................................ 14

**Constitutional Provisions**
U.S. Const. art. III, § 2 ......................................................................................... 8

Defendants America PAC, Group America LLC, and Elon Musk respectfully move to dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 14; "Am. Compl.") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants seek dismissal because Plaintiffs lack Article III standing, having failed to allege any concrete injury traceable to Defendants' alleged conduct, and because Plaintiffs have failed to state plausible claims for breach of contract, promissory estoppel, or violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"). Plaintiffs' claims are deficient on the face of the pleadings and should therefore be dismissed.

## I.      Introduction

Last year, America PAC, a political action committee registered with the Federal Election Commission, encouraged registered voters in Pennsylvania ("Eligible Voters") to sign a citizen petition supporting the Constitution's First and Second Amendments. Each verified Eligible Voter who signed the petition could earn $47 (and, later, $100). Each verified Eligible Voter who signed the petition and referred (the "Referrer") another verified Eligible Voter (the "Referee") to sign the petition had an additional opportunity to earn. Specifically, once verified as an eligible Referrer of an eligible Referee, America PAC paid the Referrer $47 (and, later, $100) per eligible referral. In addition to Pennsylvania, the $47 referral program ("Program") was also open to Eligible Voters in Arizona, Michigan, Georgia, Nevada, North Carolina, or Wisconsin.

Plaintiffs John Doe and Bobbi Pisor assert that they participated in the Program as signers and referrers. They received some money through the Program but sue on the theory that they have not been paid in full. They do not allege how much they have been paid, or identify when they were paid. They do not allege how many persons they referred or provide any basis to conclude that each person they referred was an Eligible Voter. They do not allege that they satisfied the

Program's requirements for payment, nor do they allege any facts to support their speculative estimation that they are owed approximately $20,000 and $10,000 respectively.

Plaintiffs' threadbare allegations, devoid of critical factual support, are fatally deficient and cannot sustain their claims as a matter of law. Because Plaintiffs have not pled a concrete injury traceable to Defendants' alleged conduct, this case should be dismissed for lack of Article III standing under Rule 12(b)(1). Likewise, Plaintiffs' breach of contract claim fails under Rule 12(b)(6), as they allege no compliance with the Program's terms, and therefore have not alleged performance by Plaintiffs or breach by Defendants. Their promissory estoppel claim is equally deficient, as Plaintiffs' failure to allege compliance with the Program's requirements precludes any reasonable reliance or injustice warranting relief. Finally, Plaintiff Doe's WPCL claim (which Plaintiff Pisor does not assert) fails because Doe has not pled facts to support the existence of an employment relationship with any Defendant, and because the referral fees he claims he is owed do not constitute "wages" under the WPCL. These deficiencies warrant dismissal of all claims against all Defendants.

## II.    Factual Background

### a.    The Parties.

Defendant Elon Musk founded Defendant America PAC, an independent expenditure only political committee registered with the Federal Election Commission. Am. Compl. at 3, ¶¶ 10, 13.[1] Plaintiffs claim that Defendant Group America LLC ("Group America") is "a corporate entity with a principal place of business in Austin, Texas." *Id.* at 3, ¶ 11.

---

[1] The numbered paragraph allegations in Plaintiff's Amended Complaint are labeled 1–32. These paragraph numbers restart at 1 on page 7 of the Amended Complaint. To avoid confusion, this brief cites both page and paragraph numbers.

Plaintiffs John Doe and Bobbi Pisor state that they are registered Pennsylvania voters and residents of Bucks County and Butler County respectively. *Id.* at 2, ¶¶ 6, 8. Doe says that he worked as a canvasser for America PAC and Group America, and that while canvassing, he "referred many voters to sign the America PAC petition." *Id.* at 5, ¶¶ 24–25. Doe was paid for his canvassing work, and "was paid some referrals for the petition signatures he obtained." *Id.* at 6, ¶ 27. He claims, however, that he received some unspecified payments "late," and "estimates that he has not been paid at least $20,000 he is owed for his referrals." *Id.* Doe does not say how many referrals he made, whether the individuals he referred were Eligible Voters who listed Doe when completing the petition (and, if they were, how Doe knows this), or how much Doe has already been paid (or when). Nor does Doe provide any details about the basis for his "estimate" that he is owed $20,000.

Doe alleges that he "contacted Defendants, making multiple attempts to receive full payment for his referrals, but to no avail." *Id.* at 6, ¶ 28. He does not, however, provide any information about the timing, nature, or substance of these alleged contacts. Doe claims that his unrealized expectation of receiving additional funds, and the receipt of allegedly "late payments for other referrals [] has caused him significant emotional and physical distress" because "[h]e relied on these payments to pay his bills and suffered damage to his credit and health when the payments did not arrive as expected." *Id.* at 6, ¶ 29. Doe does not, however, say when he expected to be paid, explain the basis for that expectation, or state when he received the purportedly late payments that he admits receiving. Doe sues under a pseudonym "for his safety and security." *Id.* at 2, ¶ 7.

Pisor says that she, too, "referred many voters to sign the America PAC petition leading up to the November 2024 election," and that she "was not paid the full promised amounts for those referrals." *Id.* at 6, ¶ 32. Pisor "estimates that she has not been paid at least $10,000 she is owed for her referrals." *Id.* Pisor's allegations are similarly devoid of any further detail about her alleged

3

referrals (or the eligibility of the individuals she referred), purported "partial" payments, or any explanation of the basis for her calculation that she is owed "at least $10,000." *Id.*

### b.    America PAC's Citizen Petition Program.

Beginning in October 2024, visitors to America PAC's website could sign a "Petition in Favor of Free Speech and the Right to Bear Arms." Am. Compl. at 3–4, ¶ 16. America PAC encouraged those who signed the petition to refer others to do the same, and offered "$47, later increased to $100, payment for each successful referral of a registered voter in Pennsylvania who signed the America PAC petition." *Id.* at 4–5, ¶¶ 17, 18, 21. Musk publicized America PAC's program, including through an October 17, 2024 X post. *Id.* at 4, ¶ 19.

Plaintiffs do not allege that they had any written employment agreement with any Defendant. Nor do they allege that America PAC agreed to pay for valid, verified referrals by any date certain. The communications regarding the Program that the Amended Complaint relies upon also do not promise payment by any date certain. *See* Am. Compl. at 4–5, ¶¶ 18, 19, 21. Instead, the only America PAC communication that the Amended Complaint references states as follows

> SIGNER & REFERRER PAYMENT PROGRAMS 10/17 - 11/05 If you signed this petition while a $47 or $100 payment offer was active and met the criteria of state, voter registration status, and/or completed referrals, your payment is being processed. Due to volume, all payments are expected to be issued on or before Nov. 30, 2024. Before payment is made, America PAC will verify the accuracy of all information of the referrer and referee. Payments of $600 or more will require the referrer to provide a signed IRS W-9 so an IRS 1099 can be issued. To be eligible, both the referrer and the petition signer must be registered voters of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin.

EFC No. 1-1 at 2; *see also* Am. Compl. at 4, ¶ 16 (citing same).

Plaintiffs do not dispute that this accurately describes the citizen petition program. In fact, they cite this website in their live pleading. Am. Compl. at 4, ¶ 16. This website, in turn, makes the criteria for payment clear. To earn for a person's own signature, the person must be an Eligible Voter—*i.e.*, a registered voter in one of seven states—Arizona, Michigan, Georgia, Nevada, North

Carolina, Pennsylvania, or Wisconsin. *Id.* To earn for a referral, the Referee must also be an Eligible Voter and must list the Referrer when they complete the petition. *Id.*; *see also* Am. Compl. at 4–5, ¶ 21. Payment would not be issued unless America PAC was able to "verify the accuracy of all information of the referrer and referee," and "[p]ayments of $600 or more will require the referrer to provide a signed IRS W-9." *Id.*

### III.        Argument and Authority

"Standing is a 'threshold jurisdictional requirement,' and [courts] have a 'bedrock obligation to examine [their] own subject matter jurisdiction'" *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 234 (3d Cir. 2024) (quoting *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)). "Because standing is essential to [federal court] jurisdiction, it 'is a threshold question in every federal case' and can be neither waived nor assumed." *Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 641 F. App'x 181, 183 (3d Cir. 2016) (citations omitted). Accordingly, when a motion under Federal Rule of Civil Procedure 12 is based on several grounds, a court will first consider the 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, "all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F.Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994). Accordingly, Defendants address their 12(b)(1) motion first, then proceed to their 12(b)(6) arguments.

### a.        Thise case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

#### i.        Standard for dismissal under Rule 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. "Federal courts do not possess a roving commission to publicly opine on every legal question," nor do they "exercise general legal oversight . . . of private entities." *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Rather, Article III of the United States Constitution limits federal court jurisdiction to actual "cases" and "controversies." U.S. Const. art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The burden to establish standing rests with the plaintiffs and "failure to allege the elements of standing means that [federal courts] lack jurisdiction to adjudicate their claims." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 203 (3d Cir. 2016); *see also Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing and must 'clearly ... allege facts demonstrating each element.') (citations omitted).

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must have: (1) suffered an injury in fact; (2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision of the court (redressability). *Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). As the party invoking a court's jurisdiction, the plaintiff must establish all three elements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citation omitted) (cleaned up). In other words, "[i]f the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 594 U.S. at 413 (citation omitted).

Suing for a putative class does not impact the threshold showing required to withstand a 12(b)(1) motion. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have

6

been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

### ii. Plaintiffs have not pled any injury-in-fact traceable to any Defendant.

Plaintiffs' alleged injury—purported unpaid referral payments—is premised on the theory that Plaintiffs "successfully referr[ed] Pennsylvania registered voters to the America PAC petition." Am. Compl. at 5, ¶ 22. The vague, conclusory Amended Complaint does not allege facts sufficient to support a finding of injury, or trace such alleged injury to Defendants.[2] That is because it provides no basis to conclude that referral payments Plaintiffs claim to be owed meet the basic requirements for a valid referral, as stated in the Amended Complaint. Accordingly, Plaintiffs have not alleged they are entitled to such payments (injury) by virtue of Defendants' wrongful conduct (traceability).

First, Plaintiffs admit that referral payments were only available when a Referee was a "registered voter[] of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin," Doc. 1-1; *see also* Am. Compl. at 3–4, ¶ 16. While they claim that some of their

---

[2] To the extent that Plaintiff Doe alleges receiving referral payments "late," he offers no factual allegations whatsoever that might trace this alleged "lateness" to Defendants. He does not even try. Instead, he makes a passing reference to "late" referral payments in one paragraph of the live pleading, Am. Compl. at 6, ¶ 29, and never mentions it again. When does Doe believe the payments were due to him, and how did he form that belief? When was he actually paid? And—most importantly for causation purposes—how does Doe connect this purported "lateness" to any conduct by Defendants? We are never told. This is plainly insufficient to establish standing to sue any Defendant for any purportedly "late" payments. *See also infra*, Argument & Authority, Part II(b)-(c) (discussing same in the context of failure to state a claim).

referrals were "successful," Plaintiffs have not pled that *every* voter they referred to sign the petition was, in fact, an Eligible Voter (*i.e.*, registered to vote in one of the seven select states). *See id.* at 5, ¶¶ 25 ("Plaintiff John Doe referred many voters to sign the America PAC petition"); 6, ¶ 31 (Plaintiff Pisor "referred many voters to sign the America PAC petition").

Second, Plaintiffs acknowledge that a referral fee was only available where a Referee "lists" the Referrer's "email address in the referrer section of their petition signature." Am. Compl. at 4–5, ¶ 21. Yet Plaintiffs do not allege that all of the individuals they referred to sign the petition listed one of the Plaintiffs' email addresses in the petition's "referrer section."

Third, Plaintiffs admit that "a signed IRS W-9" was required to receive payments over $600. ECF No. 1-1; *see also* Am. Compl. at 3–4, ¶ 16. Yet—though they allege being owed thousands of dollars—Plaintiffs do not allege that they provided Defendants with a signed W-9.

Plaintiffs have not even cursorily pled that they met these basic (and undisputed) requirements necessary for a Referrer to be eligible for a referral payment under America PAC's petition program. Plaintiffs have not alleged that each of their referrals was an Eligible Voter; have not alleged that each individual referred listed Plaintiffs' email addresses in the "Referrer" field on the petition; and have not alleged that Plaintiffs submitted a signed IRS form W-9 to America PAC. As such, with respect to purported referral payments, Plaintiffs have failed to allege "'a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Paws v. U.S. Dep't of Agric. Animal & Plant Health Inspection Serv.*, No. CIV.A. 95-4719, 1996 WL 524333, at *2 (E.D. Pa. Sept. 9, 1996) (quoting *Lujan*, 504 U.S. at 560–61).

Indeed, "[w]ith respect to 12(b)(1) motions in particular, 'the plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims [] rather than facts that

are merely consistent with such a right.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (quoting S*talley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)). In this respect, *Finkelman* is instructive. In *Finkelman,* a plaintiff sought monetary recovery on the theory that the NFL's ticket policy injured him by preventing him from successfully purchasing a ticket at face value in a ticket lottery. *Finkelman*, 810 F.3d at 197. The Third Circuit found that this did not confer standing, because "Finkelman *failed to enter* the NFL's ticket lottery." *Id.* at 198 (emphasis added). Without having pled that he entered the lottery, Finkelman alleged no injury, because "any harm that Finkelman suffered is properly attributed not to the NFL, but rather to his own decision not to enter the ticket lottery." *Id.*

Similarly here, Plaintiffs have not affirmatively alleged facts that would entitle them to any additional payments, because they have not pled that they complied with all of the petition's requirements—including with respect to each referral for which they claim payment—which are prerequisites to receiving such payment. Thus, they have not alleged any Article III injury. *See id.*

In a similar vein, *Finkelman* found that, "if we treat Finkelman's injury-in-fact as his inability to obtain face-price tickets to the Super Bowl, that injury is simply not traceable to the NFL's withholding of tickets given that Finkelman sought tickets only in the resale market." *Id.* at 198. So too here. Because Plaintiffs have not pled that they complied with the terms of the petition as to the allegedly unpaid referrals, they have not pled alleged facts sufficient to establish that any alleged nonpayment is "fairly traceable to the challenged conduct of" the Defendants. *Spokeo*, 578 U.S. at 338; *Yaw*, 49 F.4th at 310.

Accordingly, this case should be dismissed under Rule 12(b)(1) for failure to allege causation as to any Defendant.

### iii.    Musk and Group America should be dismissed as Defendants because Plaintiffs have not alleged *any* relevant activity by these Defendants *whatsoever*.

The absence of a causal link is even more stark with respect to Defendants Group America and Musk, as Plaintiffs do not allege any conduct whatsoever by these Defendants that relates to referral payments under the America PAC petition program.

**<u>Group America</u>**. Doe alleges that he "worked as a canvasser for . . . Group America," and that he "was paid his hourly rate for canvassing." Am. Compl. at 5–6, ¶¶ 24, 27. Doe does not allege any conduct by Group America relating to allegedly late payments or underpayments, and Pisor does not allege any dealings with Group America at all. Instead—as the Amended Complaint makes clear—Plaintiffs' claims relate to payments for allegedly referring people to sign America PAC's petition. Am. Compl. at 6, ¶¶ 27 (Doe claiming that "he has not been paid at least $20,000 he is owed *for his referrals*"); 32 (Pisor claiming that "she has not been paid at least $10,000 she is owed *for her referrals*") (emphases added).    This complete absence of relevant factual allegations severs traceability, independently warranting Group America, LLC's dismissal under Rule 12(b)(1). *See, e.g., Spokeo*, 578 U.S. at 338; *Yaw*, 49 F.4th at 310.

**<u>Musk</u>**. Equally fatal is Plaintiffs' failure to connect their purported injury to Defendant Musk, whose sole alleged act—making one X post publicizing the America PAC petition—bears no relation to the petition's operation or the allegedly uncompensated referrals that Plaintiffs claim to have made. *See* Am. Compl. at 4, ¶¶ 19–20. Indeed, Plaintiffs allege no conduct by Musk in managing or executing America PAC's petition program or approving or issuing payments thereunder. Rather, as the Amended Complaint makes clear, America PAC operated the petition and would "verify the accuracy of all information of the referrer and referee" before referral payments were issued. Am. Compl. at 4, ¶ 16 (citing ECF No. 1-1 at 2).

In the absence of any allegations that could fairly trace any alleged nonpayment to conduct by Musk or America PAC, these Defendants should be dismissed from this case under Rule 12(b)(1) because Plaintiffs lack Article III standing to sue them. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013); *Finkelman*, 810 F.3d at 193–94.

> **iv.    Plaintiffs lack standing to sue for alleged nonpayments to petition signers.**

To maintain this putative class action, a Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also, e.g.*, *Simon*, 426 U.S. at 40, n.20. The Amended Complaint does not say that Plaintiffs were not paid for validly signing the petition themselves. Rather, Plaintiffs only allege nonpayment for referring *others* to sign the petition. Am. Compl. at 3–6, ¶¶ 16–32.

Nonetheless, Plaintiffs purport to sue for breach of contract and promissory estoppel on behalf of a class of "All persons registered to vote in Pennsylvania when they signed the America PAC petition who have not received the agreed upon payments from Defendants." Am. Compl. at 7, ¶ 2. *See also* Am. Compl. at 10, ¶ 20 ("Plaintiffs and Class Members are entitled to damages, including, without limitation, unpaid signature and referral fees, for Defendants' breach of contract."); 11, ¶ 26 ("Plaintiffs and Class Members are entitled to damages they incurred based upon their detrimental reliance on Defendants' promises, including, without limitation, unpaid signature and referral fees.").

Plainly, without alleging that they themselves were denied payment for validly signing the petition, Plaintiffs lack standing to sue on behalf of others who may claim not to have received such payments. Indeed, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself

11

or any other member of the class." *O'Shea*, 414 U.S. at 494; *see also, e.g.*, *Warth*, 422 U.S. at 502; *Simon*, 426 U.S. at 40, n.20.

Because the Amended Complaint provides no factual basis to conclude that Plaintiffs themselves were denied petition-signer payments, Plaintiffs lack standing to maintain their breach of contract or promissory estoppel claims as relates to petition-signature payments. Accordingly, Plaintiffs' claims should be dismissed for lack of standing to the extent that they are predicated upon such allegations.

### b. Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a plausible legal claim.

### i. Standard for dismissal under 12(b)(6).

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (cleaned up).

As the Third Circuit has explained:

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). Notably, in applying this standard, "[m]ere restatements of the elements of a claim are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted) (cleaned up).

ii.    **Plaintiffs fail to state a breach of contract claim against any Defendant.**

A breach of contract claim requires a plaintiff to show "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) *that the party stating the claim performed its own contractual obligations*." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (emphasis added). The party alleging breach bears the burden of showing all elements. *Bohler-Uddelholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 102 (3d Cir. 2011); *Food Team Int'l, Ltd. v. Unilink, LLC*, 2013 WL 5476582, at *10 (E.D.Pa. Sept. 30, 2013) (citing 23 Williston on Contracts § 63:14 (4th ed. 2013)), *rev'd on other grounds*, 595 Fed. Appx. 146 (3d Cir. 2014).

Plaintiffs' breach of contract claim should be dismissed because the Amended Complaint does not allege performance by Plaintiffs or breach by any Defendant. As discussed above, Plaintiffs allege breach of contract on the theory that they were not paid in full for referring people to sign the petition.[3] The petition made clear that referral payments would not be made unless: (1) the Referee lists the Referrer when completing the petition; (2) the Referrer and Referee were both Eligible Voters who signed the petition; (3) America PAC was able to "verify the accuracy of all information of the referrer and referee;" and, (4) for payments of $600 or more, "the referrer provide[s] a signed IRS W-9." Am. Compl. at 3–4, ¶¶ 16, 21; *see also* ECF No. 1-1. Absent

---

[3] To the extent that this claim is based on alleged nonpayments for Plaintiffs' own signatures on the petition, it fails because the Amended Complaint does not even allege that Plaintiffs were not paid for those signatures. *See supra*, Argument & Authority, Part I(d).

fulfillment of these requirements, no payment is due, because the Referrer has not met the conditions set out in the petition.

Plaintiffs admit the petition's substantive terms. *See* Am. Compl. at 4, ¶ 17 (discussing a "$47, later increased to $100, payment for each *successful* referral of a registered voter in Pennsylvania who signed the America PAC petition.") (emphasis added)). Yet the Amended Complaint does not even allege that each allegedly unpaid referral met these requirements. While Plaintiffs allege that they "successfully" referred petition signers, Am. Compl. at 2, ¶ 3; 5, ¶ 23, and allege that they received payments for some referrals, Am. Compl. at 6, ¶¶ 27, 32, they do *not* say that any of their allegedly unpaid referral payments are for "successful" referrals. Accordingly, they fail to allege that Plaintiffs performed under the purported contract, or that any Defendant breached it.

Further compounding the inadequacy of their pleading, Plaintiffs fail entirely to provide critical factual detail needed to establish their claim. Specifically, Plaintiffs do not state: (1) precisely (or even approximately) how many referrals they claim to have made; (2) whether these referrals occurred during the period offering $100 or the earlier $47 period; (3) the amount of money allegedly owed for each unpaid referral; (4) when payment for these referrals should have occurred; or (5) why any lack of payment was improper, given the explicit conditions of the petition. Without such factual allegations, Defendants have not been given "fair notice of what the... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007); *see also Cephas v. George W. Hill Corr. Facility*, No. CIV.A. 09-6014, 2011 WL 2695311, at 3 (E.D. Pa. July 12, 2011) (dismissing claim due to failure to allege sufficient factual details to put defendants on fair notice of claims against them).

To the extent that Plaintiff Doe alleges breach on the theory that he received "late" payments, Am Compl. at 6, ¶ 29, this similarly fails the Rule 12(b)(6) standard, because it fails to give Defendants any notice of any supposed factual support for this allegation (*i.e.*, when the payments were received and why Plaintiff thinks this constituted a "late" delivery of such payment). Like the vague, conclusory nonpayment claims, Plaintiff Doe's "late" payment allegations are the type of "allegations that, because they are no more than conclusions, are not entitled to the assumption of truth," and should therefore be dismissed under Rule 12(b)(6). *Connelly*, 809 F.3d at 787.

The petition is also explicit that America PAC will review the accuracy of any referral to ensure that it meets the petition's requirements. Nonetheless, the Amended Complaint does not allege that America PAC reviewed the accuracy of Plaintiffs referrals, approved those submissions, and still denied payment. In fact, the Amended Complaint concedes that America PAC paid Plaintiffs for valid referrals that they completed. *See* Am. Compl. at 5–6, ¶¶ 23–32.

Accordingly, in the absence of factual allegations sufficient to establish that Plaintiffs complied with the terms of the petition as to their allegedly unpaid referrals—and that America PAC failed to pay Plaintiffs for *valid* (or, in Plaintiffs' words, "successful") referrals—Plaintiffs have not stated that America PAC breached any contract, or that Plaintiffs themselves upheld their end of the bargain. *See Frederico*, 507 F.3d at 203. Failure to pay for an alleged referral—without a corresponding allegation that the referral complied with the petition's terms—is not sufficient to state a claim that Plaintiffs performed under those terms. Without alleging that they performed under the petition's terms, Plaintiffs also have not alleged any breach thereof by any Defendant. As such, the Amended Complaint fails to state a claim for relief as to breach of contract and the First Cause of Action must be dismissed as to all Defendants.

iii.    **Plaintiffs fail to state a plausible promissory estoppel claim.**

To plead a viable promissory estoppel claim under Pennsylvania law, a plaintiff must allege facts sufficient to show: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. 2005); *V-Tech Servs., Inc. v. Street*, 72 A.3d 270, 276 (Pa. Super. 2013); *see also Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). Critically, Plaintiffs must demonstrate that their reliance was both reasonable and justifiable, and that injustice will occur unless the promise is enforced. *Cohn v. Pennsylvania State Univ.*, No. CV 19-2857, 2020 WL 738496, at *10 (E.D. Pa. Feb. 12, 2020); *V-Tech Servs., Inc.*, 72 A.3d at 276; *see also Pandit v. Temple Univ.*, 2025 WL 388818 *2 (E.D. Pa. 2025) (setting forth same standard).

The Amended Complaint falls well short of stating a claim for promissory estoppel. Notably, Plaintiffs have not set forth facts sufficient to establish that Plaintiffs reasonably relied on any purported promise by any Defendant. As explained above, the Program's requirements were clear: a referrer is only eligible to receive payment for referring an Eligible Voter to sign the petition and fulfilling the other requirements for a valid referral. *See supra*, Factual Background, Part II. These requirements further provide that America PAC would review referrals to ensure compliance with these requirements, and that payment would not be made unless America PAC could verify this information. *See id.*

Despite acknowledging these explicit conditions, Plaintiffs do not allege that their unpaid referrals actually met any of the required criteria. Without alleging that their purportedly unpaid referrals complied with these terms, Plaintiffs cannot plausibly claim that they reasonably relied on any supposed "promise" of payment. This is equally true to the extent that Plaintiff Doe purports

to assert a promissory estoppel claim based on supposedly "late" payments. In addition to failing to plead that he satisfied the Program requirements, he hasn't even identified the promise that was supposedly broken (*i.e.*, when were the late payments supposed to be paid, and when were they actually paid?). *See* Am. Compl. at 6, ¶ 29.

Moreover, injustice is not avoided by causing Defendants to pay Plaintiffs for referrals that do not adhere to the terms of the alleged promise. To the contrary, in the absence of factual averments establishing that Plaintiffs complied with the terms and conditions of the petition, no injustice can lie because there is no obligation to pay for a non-compliant referral. *See, e.g., Cohn*, 2020 WL 738496, at *10.

Because it lacks factual allegations that could support findings of reasonable and justifiable reliance and injustice, the Amended Complaint fails to state a claim for relief as to promissory estoppel and the Second Cause of Action must be dismissed as to all Defendants.

### c. Doe has not pled a plausible WPCL claim.

Plaintiff John Doe also asserts violations of the Pennsylvania Wage Payment and Collection Law ("WPCL") on the theory that Defendants were his "employers" and that his allegedly unpaid referral fees were "wages" within the meaning of the statute. Plaintiff makes these conclusory statements without pleading any facts that could establish (1) any employment agreement with any Defendant; (2) that Defendants exercised any control over the manner or means of Doe's alleged work; or, (3) that Doe's allegedly "unpaid" referral fees were part of any recognized wage structure or employment relationship such that they could constitute "wages" under the WPCL. Accordingly, this claim should be dismissed on the pleadings.

i.    **Doe has not pled an employer-employee relationship with any Defendant.**

Doe's WPCL claim fails because he has not pled facts sufficient to establish an employer-employee relationship with any Defendant. Absent such allegations, this claim cannot proceed and must be dismissed at the pleading stage under Rule 12(b)(6).

The WPCL, 43 P.S. § 260.1, *et seq.*, is a Pennsylvania employment law that provides employees a tool to recover unpaid wages from their employers. The WPCL does not apply to all types of working relationships. A foundational element for a plausible claim under the WPCL is that an employer-employee relationship must have actually existed between the parties. *Morin v. Brassington*, 871 A.2d 844, 850 (Pa. Super. 2005) (holding that a store manager was not entitled to relief under the WPCL because his "working relationship with [store owner] was that of an independent contractor and not an employee."); *Tomlinson v. Checkpoint Sys., Inc.*, No. CIV.A. 06-2205, 2008 WL 219217, at *1 (E.D. Pa. Jan. 25, 2008) (holding that because a consultant "was not an employee under the WPCL, he [was] not entitled to its protection."); *see also Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 798 (3d Cir. 2010) (upholding district court ruling that teaching assistant was not an employee and not entitled to remedies under WPCL). "The question of whether a plaintiff is an employee…is ultimately a question of law for the court." *Green v. Golla Ctr. for Plastic Surgery, P.C.*, No. 2:18-CV-00034, 2019 WL 1083688, at *3 (W.D. Pa. Mar. 7, 2019); *see also Dabronzo v. Roche Vitamins*, 232 F. Supp. 2d 306, 315–16 (D.N.J. 2002).

While the WPCL defines "employers" as entities or individuals, including their agents and officers, "employing any person in this Commonwealth," it does not further define what "employing" means under the statute. 43 P.S. § 260.2a. When determining whether a worker is an employee under the WPCL, Pennsylvania courts apply a multifactor test that includes consideration of the following factors:

the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

*Morin,* 871 A.2d at 850*; Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 320 (3d Cir. 2016).

Though no one factor is dispositive, courts have consistently recognized that the right to control the manner in which work is performed is the most significant and "paramount" consideration. *Morin*, 871 A.2d at 850*; Williams*, 837 F.3d 314 at 320; *Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 3992960, at *9 (M.D. Pa. Sept. 4, 2012) ("The most important of these factors, for our purposes, is the right of an individual to control the manner that another's work is to be accomplished."). Even when an employer-employee relationship exists, the WPCL does not cover conduct by agents and officers of an employer unless the individual was an "active decision maker" in employment or wage decisions. *See Belcufine v. Aloe*, 112 F.3d 633, 635 (3d Cir. 1997) (dismissing WPCL claim against officers absent specific allegations of involvement); *Mohney v. McClure*, 568 A.2d 682, 686 (Pa. Super. 1990), *aff'd*, 604 A.2d 1021 (Pa. 1992) (agent liability under the WPCL is premised on the person being held liable being an active decision maker in the context of deciding not to pay the employees). Here, as with any 12(b)(6) motion, conclusory allegations of employment are insufficient; plaintiffs must provide specific facts to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions … will not do."); *Twombly*, 550 U.S. at 570 (requiring plausible factual allegations).

A person is not an employee under the WPCL if the alleged employer lacks control over their work and the relationship lacks basic indicia of employment, such as supervision, contractual terms, or integration into the employer's business. In *Morin*, a manager operated a convenience store under an oral agreement to receive minimum wage payments upon the store owner's

retirement from the owner's separate full-time job. *Id*. at 847. For eleven years, the manager autonomously ran the store—setting his own hours, hiring staff, making sales, ordering supplies, and establishing store rules—while living above the store for nominal rent. *Id*. at 848, 850. The store owner, preoccupied with his primary job, visited sporadically, retained only the right to terminate the manager, and exercised no control over daily operations. *Id*. When the owner failed to pay, the manager sued, claiming employee status under the WPCL. *Id*. The trial court denied WPCL penalties, finding the manager was not an employee. *Id*. On appeal, the Superior Court affirmed, applying the multifactor test to hold that the manager was an independent contractor, not an employee, primarily because of the store owner's lack of control over the manager's work methods. *Id*. at 850. The court also noted that the absence of an employment contract and the manager's use of his own equipment as supporting the conclusion that no employer-employee relationship existed. *Id*.

Similarly, in *Tomlinson*, a consultant, initially hired by a security technology firm incorporated in Pennsylvania but based in New Jersey, negotiated a full-time senior director position. *Id*. at *1–2. The firm offered the consultant a role via a letter promising a contract with a nine-month severance package. *Id*. at *2. The consultant worked primarily in New Jersey, with occasional telecommuting from Pennsylvania, setting his own schedule and using his own resources. *Id*. at *1, *10. Despite starting work and being offered a written employment contract, the consultant never received or executed it. *Id*. The firm then terminated the consultant during a layoff and denied him severance. *Id*. at *3. The consultant sued under the WPCL, however the district court granted summary judgment to the firm, dismissing the WPCL claim because the consultant was not a Pennsylvania-based employee entitled to WPCL protections. *Id*. at *9–10.

20

The court reasoned that the firm did not control the consultant's work methods, no contract existed, and incidental telecommuting did not establish a Pennsylvania-based relationship. *Id*. at *10.

Doe has not pled facts that could support the existence of an employer-employee relationship with any Defendant. His bare-bones allegations regarding employment amount to vague and conclusory claims that he "worked as a canvasser for Defendants America PAC and Group America, LLC" and was "jointly employed" by them. Am. Compl. at 5, ¶ 24; 11, ¶ 28. These are the **_only_** assertions Doe has proffered to "establish" an employer-employee relationship existed and he has failed to plead any facts alleging:

- That any Defendant exerted control over the manner that work is to be done;

- That any Defendant supervised any element of his work;

- That any employment agreement, written or oral, existed with any Defendant;

- That any Defendant provided him with tools, training, or benefits; or,

- That any tax documentation or other materials exist demonstrating his purported status as an "employee" under the WPLA.

As to America PAC, Doe's allegations wholly fail to satisfy the multifactor test's paramount control factor. *See Morin*, 871 A.2d at 850 (control is "paramount" factor in determining "employee" status under WPCL). Doe claims he "referred many voters" to America PAC's petition, Am. Compl. at 5, ¶¶ 24–25, but has pled no facts indicating America PAC controlled his methods, set his schedule, supervised his activities, provided him with any tools or equipment, or directed referral solicitations. The referral program's public nature, open to "any registered voter in Pennsylvania," Am. Compl. at 1–2, ¶¶ 1–2, including co-Plaintiff and non-canvasser Bobbi Pisor, mirrors the non-employment structures in *Morin* and *Tomlinson*, where incentives were offered without control and where work was self-directed. Even assuming, for the sake of

argument, that Doe received hourly payments for canvassing, Am. Compl. at 6, ¶ 27, such compensation does not establish employment absent control over his work or other hallmarks of any employment relationship.

Doe's allegations against Group America are even more deficient. Doe's sole claim against Group America is that he was "joint employed" by them and America PAC, Am. Compl. at 6, ¶ 28, a conclusory statement unsupported by any other facts alleged in the Amended Complaint. Doe has pled nothing about Group America's involvement, control, or relationship to America PAC. Without facts showing control or hallmarks of employment, like supervision or contracts, Doe cannot establish that any employment relationship existed with Group America, LLC. *See Morin,* 871 A.2d at 850*; Williams*, 837 F.3d at 320; *Green,* 2019 WL 1083688, at *3.

Finally, Doe's WPCL claim against Musk fails because he has not pled any facts alleging that Musk had any involvement in employment or wage decisions. While Doe alleges that Musk was an "agent or officer" of America PAC and Group America, Am. Compl. at 6, ¶ 30, that is not enough to state a plausible claim against him. Rather, as *Belcufine* and *Mohney* make clear, an individual officer or agent can only be liable under the WPCL if they had decision-making authority over employment and wage-related matters. Doe has pled no such facts here, instead relying solely on Musk's X post publicizing the program—an allegation that has no relevance to WPCL liability. Absent any factual basis to conclude that Musk had control over any wage decisions, the putative WPCL claim against Musk fails under 12(b)(6).

Because Plaintiff Doe has not pled facts sufficient to establish an employer-employee relationship with any Defendant, his WPCL claim fails and should be dismissed.

ii.    The alleged unpaid referral fees do not constitute "wages" under the
       WPCL.

Even if Doe had adequately pled an employment relationship with any Defendant (he has

not), his WPCL claim would still fail, as the referral fees he seeks—$47 or $100 per successful

referral—are not wages or wage supplements under the WPCL. These payments, offered as

signature and referral incentives to all registered voters, including non-employees, were not

compensation tied to Doe's alleged employment or any contract. Am. Compl. at 1–2, ¶¶ 1–2; 4, ¶¶

19, 21. Because wages must inherently stem from an employment contract or services performed

under an employer's direction, Doe's claim, rooted in a public petition program, cannot meet this

standard and warrants dismissal with prejudice under Rule 12(b)(6).

The WPCL defines "wages" as "all earnings of an employee, regardless of whether

determined on time, task, piece, commission or other method of calculation," including "fringe

benefits or wage supplements" like bonuses when contractually promised. 43 P.S. § 260.2a. While

this definition has been interpreted to encompass various forms of compensation, courts still

require that there be a nexus between the benefit received and the person's employment for

payments of any kind to constitute "wages" under the WPCL. *Braun v. Wal-Mart Stores, Inc.*, 24

A.3d 875, 956 (Pa. Super. 2011) (wages are compensation "offered to plaintiffs as employees, and

not for some reason entirely unrelated to their employment"); *Weldon v. Kraft, Inc.*, 896 F.2d 793,

801 (3d Cir. 1990) (WPCL enforces only contractual wage obligations). Payments lacking an

employment-specific nexus or contractual basis fall outside the WPCL's scope. *Kafando v. Erie*

*Ceramic Arts Co.*, 764 A.2d 59, 62–63 (Pa. Super. 2000); *Sendi v. NCR Comten, Inc.*, 619 F. Supp.

1577, 1579–80 (E.D. Pa. 1985).

Payments are not "wages" under the WPCL unless they are contractually promised for

employee-specific services. In *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59 (Pa. Super. 2000),

a factory worker sought to recover a gainsharing bonus he believed he was entitled to under the WPCL, asserting it constituted a wage earned during his employment. 764 A.2d at 61. The employer's program, however, tied bonuses to company profits, not individual effort, and required employment at distribution. *Id*. at 61–62. Because the bonus depended on corporate performance and lacked a contractual guarantee for payment, the court dismissed the claim, finding it was not a wage due to its disconnection from employee services. *Id*. at 62–63.

Likewise, in *Sendi v. NCR Comten, Inc.*, a regional sales director sought payment under the WPCL for commissions on sales initiated before his resignation, arguing his prior efforts warranted compensation. 619 F. Supp. at 1578. The employer's compensation plan awarded commissions only to employees at payment, and no contract promised post-termination pay. *Id*. at 1578–79. The court dismissed the claim, ruling the commissions were not wages because the plaintiff lacked contractual entitlement after leaving employment, as the WPCL protects only employee compensation tied to employment agreements. *Id*. at 1579–80.

Here, Doe's WPCL claim fails because the referral fees were not "wages"—they were incentive payments open to registered Pennsylvania voters, regardless of whether they were an employee of any Defendant. As the Amended Complaint admits, America PAC offered $47 or $100 per successful petition referral to "any registered voter in Pennsylvania," a group that ostensibly includes even Doe's co-Plaintiff Bobbi Pisor, who does not claim to have been an employee of Defendants. Am. Compl. at 1–2, ¶¶ 1–2; 6, ¶ 32. The referral payments were advertised through X and a public website, requiring only voter referrals, not employment or canvassing duties. *Id*. at 4, ¶¶ 17–19, 21; ECF No. 1-1. Doe does not allege the fees were exclusive to employees, nor has he pled that they were in any way tied to any alleged employment relationship.

Doe's claim improperly stretches the WPCL beyond its statutory bounds, seeking to convert a petition signature incentive into labor-law-protected employment compensation. The WPCL governs only payments tied to employment through contractual obligations. *Braun*, 24 A.3d at 956; *Kafando* 764 A.2d at 61. Doe cannot satisfy this standard, as he alleges no contract or employment-specific conditions for the referral payments. Unlike wages or bonuses designated for employees, these fees lacked any employment-related restrictions, designed instead to encourage petition signatures from any Eligible Voter. Doe's referral efforts—like those of any program participant—do not render the fees wages absent an employment nexus. Accepting Doe's theory would extend WPCL protections to all manner of non-employment settings, undermining the statute's employment-focused purpose.

Accordingly, because the referral fees at issue lack any employment-specific nexus or contractual foundation required by the WPCL, Doe's claim under that statute should be dismissed under Rule 12(b)(6).

## IV.        Conclusion

For the foregoing reasons, this case should be dismissed in its entirety.

Date: June 9, 2025

*/s/ Matthew H. Haverstick*
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com

*/s/ Anne Marie Mackin*
Chris K. Gober*
Texas State Bar No. 24048499
Andy Taylor*
Texas State Bar No. 19727600
Anne Marie Mackin*
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Lex Politica PLLC
P.O. Box 341015
Austin, TX 78734
Telephone: (512) 354-1785
cgober@lexpolitica.com
ataylor@ataylorlaw.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**Attorneys for Defendants**

*\*Admitted* pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2025, I electronically filed the foregoing documents and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: June 9, 2025

<u>*/s/ Matthew H. Haverstick*</u>
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com