UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE AND BOBBI PISOR,** | : | |
| | : | |
| *Plaintiffs,* | : | No. 2:25-cv-01691-WB |
| v. | : | |
| | : | |
| **AMERICA PAC; GROUP AMERICA, LLC; AND ELON MUSK,** | : | |
| | : | |
| *Defendants.* | : | |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants respectfully submit this reply in support of their Motion to Dismiss (ECF No. 28-1, "MTD") Plaintiffs' First Amended Complaint (ECF No. 14). Plaintiffs' Response in Opposition (ECF No. 34-2, "Resp.") not only fails to cure their lack of Article III standing and failure to plead plausible claims but compounds these deficiencies by repeatedly misstating both the applicable law and the relevant facts. Plaintiffs tacitly admit their pleading deficiencies, as they request leave to amend no fewer than three times in their Response. Resp. at 3 n.1, 7 n.3, 12-13. Having already amended once without curing their fatal standing and plausibility flaws, Plaintiffs offer no basis to believe further amendment would succeed. For the reasons stated herein and in the MTD, this case should be dismissed with prejudice.

**I.    Plaintiffs misstate the applicable legal standard for dismissal.**

As an initial matter, Plaintiffs incorrectly state that this case "can only be dismissed if it appears to a certainty that no relief could be granted under any set of facts which could be proved." Resp. at 2 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). This is simply wrong. The motion to dismiss standard under *current* Supreme Court precedent—as established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—bears repeating in full:

> As the Court held in *Twombly*, the pleading standard Rule 8 … demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. **Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.**
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. … The plausibility standard is not akin to a probability requirement, but it asks for **more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line** between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie [] *Twombly*. First, **the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions**. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. … where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted) (cleaned up) (emphases added). *Twombly's* and *Iqbal*'s plausibility threshold applies here, not the outdated standard proffered by Plaintiffs.

## II. The Response cannot cure Plaintiffs' failure to plead facts which—if true—would confer standing.

### A. Rule 9(c) does not excuse Plaintiffs from plausibly alleging the foundational elements of Article III standing, including injury and causation.

As the MTD (at 5–9) explains, a "plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing and must clearly allege facts demonstrating each element." *Yaw v. Delaware River Basin Comm'n,* 49 F.4th 302, 311 (3d Cir. 2022) (citation omitted) (cleaned up). The "irreducible constitutional minimum" of standing requires a plaintiff to allege: (1) injury; (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The Response (at 3-4) attempts to evade this burden by invoking Rule 9(c), which provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). While Rule 9(c) permits general

allegations for satisfying conditions precedent, it does not relieve Plaintiffs of their pleading obligations and this case still warrants dismissal for lack of standing for the following reasons.

First—as Plaintiffs themselves acknowledge—the Amended Complaint *does not*, in fact, "allege generally that all conditions precedent have occurred or been performed." Resp. at 3 n.1, 8.[1] Thus, to the extent that Rule 9(c) governs the disposition of this motion, Plaintiffs have not satisfied even those bare minimum requirements and this case should be dismissed. *See, e.g.*, *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 405 n.1 (3d Cir. 2007) (affirming dismissal of breach of contract claim where "[t]he deficiency . . . lies not in Chemtech's failure to identify the conduct establishing satisfaction of the Agreement's [] preconditions at the requisite level of detail, but in *the omission of any allegation that the two conditions precedent occurred at all*." (emphasis added)).

Second, Rule 9(c) applies where—for example—a plaintiff is seeking to state a claim requiring them to allege satisfaction of conditions precedent. *See infra*, Part III(A).  Rule 9(c) does not govern whether a plaintiff has pled the "constitutional minimum" of standing under Article III, by pleading "(1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers Motor*

---

[1] Plaintiffs also attempt to turn the pleading standard on its head, suggesting that the Court should ignore their failure to plead successful referrals because "Defendants cite no authority suggesting that missing a single condition would disqualify Plaintiffs from receiving payment." Resp. at 10. If Plaintiffs did not satisfy the requirements for a valid referral, then they would not be entitled to compensation under any legal theory they posit. *See, e.g.*, *Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 2:04 CV 1880, 2005 WL 2304995, at *8 (W.D. Pa. Sept. 21, 2005) (commenting that to plead a breach of contract, "a plaintiff must assert … that the plaintiff has complied with [the] contract by performing her own obligations under it" and that "all conditions precedent were fulfilled ...."); *Frasca v. Wallenpaupack Lake Ests.*, No. 3:22CV2022, 2024 WL 1118979, at *8 (M.D. Pa. Mar. 14, 2024) (noting that to plead promissory estoppel, a plaintiff must plead that they "actually took action" to fulfill their end of promise.); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990) (explaining that where a plaintiff seeks to recover under WPCL, "[t]he contract between the parties governs in determining whether specific wages are earned.").

*Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290–91 (3d Cir. 2005) (citation omitted). Plaintiffs cite no authority otherwise, and they have not carried this burden.

<u>Injury.</u> Plaintiffs claim that "general factual allegations of injury resulting from the defendants' conduct are sufficient" to satisfy Article III, and that Plaintiffs meet this standard because they "allege that they are owed payment for successful petition referrals." Resp. at 4 (quoting *Lujan*, 504 U.S. at 561, and citing Am. Compl. ¶¶ 3, 22, 27, 32). As discussed in the MTD (at 5–9, 11), the Amended Complaint does not allege nonpayment for *successful* referrals.[2] Nor does it state facts that plausibly support such an inference—after all, even taking Plaintiffs' allegations as true, they give no basis upon which one could conclude (for example) that Plaintiffs knew whether a person that they referred was (1) in fact, registered to vote; or (2) listed either Plaintiff as their referrer when they signed the petition. The Amended Complaint's effort to assert a "legally protected interest" in any unpaid referral payments is—at most—"conjectural or hypothetical" and therefore insufficient to satisfy Article III. *Danvers*, 432 F.3d at 290–91; *see also, e.g., Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976) (explaining that "unadorned speculation will not suffice to invoke the federal judicial power.").

<u>Causation.</u> Equally fatal to Plaintiffs' standing is the fact that nothing in the Amended Complaint alleges conduct by Defendants which would render any alleged nonpayment "fairly traceable" to any of them. "[i]f the injury-in-fact prong focuses on whether the plaintiff suffered harm, then the traceability prong focuses on *who inflicted* that harm. The plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the

---

[2] Instead, Plaintiffs state that they "successfully refer[ed] Pennsylvania registered voters to the America PAC petition," (Am. Compl. ¶¶ 3, 22), and that they were paid for successful referrals. *Id.* ¶¶ 27, 32. They also allege that they were not paid for *other* referrals. *Id.* Taking the allegations in the Amended Complaint as true, Plaintiffs attempted to refer additional people to sign the petition and were not paid for doing so—but this does not allege nonpayment for a "successful" referral, even under the most charitable interpretation of the Amended Complaint.

4

plaintiff's injury." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (emphasis added). Here again, Plaintiffs do not claim that their purported referees (1) were registered voters; or, (2) listed Plaintiffs when signing the petition. In omitting any such allegations, the Amended Complaint allows for the possibility that the independent action (or inaction) of these third-party petition signers caused Plaintiffs to not receive an expected referral fee. Meanwhile, Plaintiffs do not allege that Defendants refused to pay any particular (and eligible) referral—they do not allege any specific conduct by Defendants as relates to Plaintiffs' purportedly unpaid referrals at all. There is no basis to conclude that some unspecified conduct by Defendants—as opposed to inaction or ineligibility of a third-party potential petition signer—caused Plaintiffs not to receive payment for any particular referral. Accordingly, Plaintiffs have not adequately pled causation. *See, e.g.*, *id.* at 142.

Redressability. For the same reasons, the Response cannot cure Plaintiffs' failure to plead that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers*, 432 F.3d at 291. While Plaintiffs allege that they referred people to sign, they have not pled that those people *actually did sign*, as eligible registered voters, who listed the Plaintiffs on the petition. As Plaintiffs do not allege that any Defendant was required to pay for such referrals, Plaintiffs have not pled any injury that the Court can redress. *Id.*

**B.    Plaintiffs cannot cure their wholesale failure to plead any relevant conduct by Defendants Group America or Musk.**

Contrary to the Response's claim (at 5), Defendants did not argue that a plaintiff has to "detail each defendant's specific role in the misconduct." Rather, the MTD (at 10–12) notes the wholesale absence of any relevant allegations to support Article III standing to sue Defendants Musk or Group America in particular. Plaintiffs balk, suggesting that requiring them to plead these elementary standing elements "would be one small step shy of requiring production of actual

5

documentation with the complaint." Resp. at 6 (citing *Negron v. Progressive Cas. Ins. Co.*, No. CV 14-577, 2016 WL 796888, at *10 (D.N.J. Mar. 1, 2016)). It is not, as the litany of caselaw on Article III jurisdiction here and in the MTD shows.

In any event, *Negron* is irrelevant, as it involved a litigant who had "pled some evidence that each [of multiple defendants] had some role in [an] alleged [fraud] scheme," but who lacked "information related to which entity implemented the online application, sold the health [] policies, or denied the claims" at issue. *Id.* Here, Musk is only alleged to have (1) founded America PAC; and, (2) posted on X promoting the petition program. Am. Compl. ¶¶ 13, 19. These allegations cannot support a finding that allegedly unpaid referral fees are fairly traceable to any conduct by Musk, as required to confer Article III standing to sue him. *See, e.g.*, *Toll Bros.*, 555 F.3d at 142. The Response's claim (at 6) that Musk "is jointly liable for Plaintiff John Doe's referral fees as unpaid wages" also does not create standing, as this statement is a legal conclusion wholly devoid of any factual support. It is not entitled to a presumption of truth, *e.g., Twombly* 550 U.S., at 554–555, and does nothing to support standing.

The allegations as to Group America are even more bare bones, as Plaintiffs only claim that "Group America LLC was Doe's direct employer and thus jointly liable." Resp. at 6. (citing Am. Compl. ¶ 24). As was the case with the allegations against Musk, conclusory labels without supporting facts fail to establish traceability and do not confer standing. *See Twombly*, 550 U.S. at 555.

## C. Plaintiffs cannot represent a class of allegedly unpaid petition signers, because neither has pled that they were not paid for signing the petition.

As discussed in the MTD (at 6-7), "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"

*Simon*, 426 U.S. at 40 n.20 (1976) (citation omitted). The Response argues that Plaintiffs have standing to sue on behalf of unpaid petition signers on the theory that "Pisor received *no payment* from Defendants—neither for signing the petition nor for referring others to do so." Resp. at 7 (emphasis added). However, this directly contradicts what Plaintiffs *actually* alleged in their Amended Complaint. There, Plaintiffs made no reference to Pisor not being paid for signing the petition and only stated that Pisor "referred many voters to sign" the petition and, "was also not paid the *full* promised amounts *for these referrals*. She estimates that she has not been paid at least $10,000 she is owed *for her referrals*." Am. Compl. ¶¶ 31–32 (emphasis added). Without any allegations that Pisor wasn't paid for signing, Plaintiffs are not part of the proposed signature class and cannot establish standing to represent them.[3]

### III. The Response cannot cure Plaintiffs' failure to plead a plausible claim.

#### A. Breach of Contract

The Response offers no meaningful counter to the MTD's explanation (at 13–15) for why Plaintiffs fail to plead a plausible breach of contract claim. Instead, it merely (1) recycles the same threadbare labels and conclusions that litter the Amended Complaint;[4] and (2) ignores Plaintiffs' failure to allege that the referees for which Plaintiffs claim credit listed Plaintiffs on the petition, as required for a referral to be valid. *See, e.g.*, Am. Compl. ¶ 16, 21. Though Plaintiffs rely heavily on Rule 9(c), their live pleading does not allege—in even the *cursory* manner Rule 9(c) would require—that all "conditions precedent" for payment have occurred. *See* Resp. at 3-4.

---

[3] It is also remarkable that—despite alleging partial payment in the Amended Complaint, Pisor now alleges that she has received *no payment* from Defendants. Resp. at 7; *see generally* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney [] certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").

[4] *See, e.g.*, Resp. at 8 ("By referring eligible voters to sign the petition, Plaintiffs accepted the offer and formed a binding contract with Defendants. Defendants breached that contract by failing to pay the full amounts owed.")

Again, Plaintiffs' invocation of Rule 9(c) (*id.*) does not excuse their failure to allege facts sufficient to establish performance of necessary contract terms. Even assuming Rule 9(c) permits general allegations, Plaintiffs have not pled—generally or otherwise—that referees were eligible voters, that they properly listed Plaintiffs as referrers by email, or that Plaintiffs submitted required documentation. Plaintiffs' assertion that details regarding their referrals will emerge in discovery does nothing to do away with federal pleading standards, which require factual plausibility at the outset, not after discovery. *See Twombly*, 550 U.S. at 555; *see also See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (requiring plaintiff to plead performance of contractual obligations).

Additionally, Plaintiffs' vague and speculative damages claims—$20,000 for Doe, $10,000 for Pisor (Am. Compl. ¶¶ 27, 32)—fail to adequately notify Defendants of the specific breaches allegedly committed, as Plaintiffs do not identify which referrals went unpaid or explain how these estimates were calculated. This lack of specificity again renders their pleading insufficient and again warrants dismissal. *See Twombly*, 550 U.S at 555; *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988) (explaining that "damages are not recoverable if they are too speculative, vague or contingent….").

### B. Promissory Estoppel

Similarly, the Response's promissory estoppel arguments recycle the Amended Complaint's conclusory assertions, offering no counter to the MTD's explanation (at 16–17) that Plaintiffs failed to plead reasonable reliance or injustice. *See* Resp. at 9-10. Plaintiffs' bare claims that they were promised payment for referrals omits the fact that, to the extent any such promise existed, all terms—not just that a referral was made—had to have been met. *See* Am. Compl. ¶¶ 16, 22. Without such facts, reliance on a conditional promise is baseless, and non-payment is no injustice.

*See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. 2005). Plaintiffs' reliance on *K7 Design Grp., Inc. v. Five Below, Inc.*, 540 F. Supp. 3d 508, 513 (E.D. Pa. 2021) (Resp. at 10), is misplaced, as the detailed reliance allegations in that case far exceed the conclusory claims put forth in the complaint here. Plaintiffs' insistence that reliance is a factual issue flouts *Twombly*'s requirement that plausible facts be pled at this stage. *Twombly*, 550 U.S. at 557.

    C.    **WPCL**

Finally, Plaintiffs offers no meaningful response to the MTD's showing (at 18–22) that Defendant Doe has failed to adequately to plead an "employment relationship" with any Defendant. *See* Resp. at 10-11. As an initial matter, the Response misstates the applicable law and the facts of the cases cited in the MTD. For example, the Response asserts that the control test employed in *Morin v. Brassington*, 871 A.2d 844 (Pa. Super. 2005) was not applicable here because that case dealt with a Workers' Compensation Act claim, not a WPCL claim. Resp. at 11 n.6. This is simply wrong. *Morin* was squarely a WPCL case that applied the control test to that plaintiff's claims under the WPCL. *Morin*, 871 A.2d at 849–50. Plaintiffs' subsequent claim that "[n]o Pennsylvania court has applied that test to WPCL claims" (Resp. at 11 n.6) is also wrong, as courts in Pennsylvania have repeatedly employed the control test to determine whether an individual was employee for the purposes of a WPCL claim. *See Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 3992960, at *9 (M.D. Pa. Sept. 4, 2012); *Inoff v. Craftex Mills, Inc.*, No. CIV. A. 06-3675, 2007 WL 4355385, at *11 (E.D. Pa. Dec. 11, 2007).

As explained in the MTD (18-22), the paramount consideration when determining employment status under the WPCL is the degree to which an individual had the ability to control the work of another. *See Morin*, 871 A.2d at 850. Doe make no allegations concerning the degree

of control Defendants had over his work, again relying solely on his conclusory and unsubstantiated statement that he was "jointly employed" by Defendants. Having failed to adequately plead that he was an employee of any defendant, Doe cannot state a claim for relief under the WPCL and his claim should be dismissed.

Doe's claim that referral fees were "wage supplements" for canvassing (Resp. at 11-12) also fails, as these fees were offered to all voters, not just employees or independent contractors working on behalf of Defendants. As "wages" under the WPCL require a nexus to employment, and because the referral fees were publicly available and not tied to Doe's alleged employment, Doe's referral fees were not "wages" under the WCPL and his WPCL claim fails as a matter of law.

**IV.   Allowing Plaintiffs to amend would be procedurally improper and futile in practice.**

Plaintiffs shrug off the fatal flaws in their pleadings as easily curable through an amended complaint and make repeated requests to amend should the Court find that they have failed to adequately allege standing or a plausible claim. *See, e.g.*, Resp. at 3 n.1, 7 n.3, 12-13. But "[a] request for a court order must be made by motion," and that motion must "state with particularity the grounds for" the relief sought. Fed. R. Civ. P. 7(b)(1)(A)–(C). Granting such a request where a plaintiff has not so moved for leave to amend would not be procedurally proper. Even if Plaintiffs filed such a motion, it would not be substantively proper and should be denied for futility, for the reasons in the MTD and here. *See, e.g.*, *Trout v. Wentz*, No. 1:10-CV-439, 2011 WL 1842743, at *2 (M.D. Pa. May 16, 2011) (noting that courts in the Third Circuit may deny leave to amend if amendment would be futile).

## CONCLUSION

For the foregoing reasons, this case should be dismissed in its entirety.

| | |
|---|---|
| Date: July 7, 2025 | */s/ Matthew H. Haverstick*<br>Matthew H. Haverstick (No. 85072)<br>Francis G. Notarianni (No. 327461)<br>Gregory B. McIntosh (No. 329531)<br>KLEINBARD LLC<br>Three Logan Square, 5th Floor<br>1717 Arch Street<br>Philadelphia, PA 19103<br>Phone: (215) 568-2000<br>Fax: (215) 568-0140<br>Eml: mhaverstick@kleinbard.com<br>fnotarianni@kleinbard.com<br>gmcintosh@kleinbard.com<br><br>*/s/ Anne Marie Mackin*<br>Chris K. Gober*<br>Texas State Bar No. 24048499<br>Andy Taylor*<br>Texas State Bar No. 19727600<br>Anne Marie Mackin*<br>Texas State Bar No. 24078898<br>Jesse Vazquez*<br>Florida State Bar No.1013573<br>Lex Politica PLLC<br>#129 7415 SW Parkway<br>Building 6, Suite 500<br>Austin, TX 78735<br>Telephone: (512) 354-1785<br>cgober@lexpolitica.com<br>ataylor@ataylorlaw.com<br>amackin@lexpolitica.com<br>jvazquez@lexpolitica.com<br><br>**Attorneys for Defendants**<br><br>**Admitted* pro hac vice |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 7, 2025, I electronically filed the foregoing documents and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: July 7, 2025                                     */s/ Matthew H. Haverstick*
                                                                 Matthew H. Haverstick (No. 85072)
                                                                 KLEINBARD LLC
                                                                 Three Logan Square, 5th Floor
                                                                 1717 Arch Street
                                                                 Philadelphia, PA 19103
                                                                 Phone: (215) 568-2000
                                                                 Fax: (215) 568-0140
                                                                 Eml: mhaverstick@kleinbard.com