**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN DOE**, *individually and on behalf of all others similarly situated,* **and BOBBI PISOR,** | **CIVIL ACTION** |
|                **Plaintiffs,** | |
| **v.** | **NO.  25-1691** |
| **AMERICA PAC, GROUP AMERICA, LLC, and ELON MUSK,** | |
|                **Defendants.** | |

| | |
|---|---|
| **ANTHONY MAGLIETTA, STEVEN REID, and JERRY VICTORIOUS,** *individually and on behalf of all others similarly situated*, | **CIVIL ACTION** |
|                **Plaintiffs,** | |
| **v.** | **NO.  25-2364** |
| **AMERICA PAC, GROUP AMERICA, LLC, and ELON MUSK,** | |
|                **Defendants.** | |

**MEMORANDUM OPINION**[1]

In the last act of the 2024 Presidential Election, Defendant Elon Musk and his Political

Action Committee, Defendant America PAC, launched an online campaign in Arizona, Georgia,

Michigan, Nevada, North Carolina, Pennsylvania, and Wisconsin—states which are colloquially

referred to as "swing states" due to their closely-divided and politically fluid electorates—

offering registered voters in those states cash payments in exchange for signing, and referring

others to sign, a petition pledging their support for the First and Second Amendments to the

---

[1] The above-captioned cases, though not consolidated, are marked as related, so the Court will consider the pending Motions together.

United States Constitution.  Plaintiffs John Doe,[2] Bobbi Pisor, Anthony Maglietta, Steven Reid, and Jerry Victorious (collectively, "Plaintiffs"), all of whom live in one of those seven swing states, allege that they filled out the petition and successfully referred others to do the same.  But they claim that Musk, America PAC, and Defendant Group America, LLC ("Group America")—an entity allegedly connected to Musk and America PAC—have not fully upheld their end of the bargain in that they owe Plaintiffs tens of thousands of dollars.

In response, Doe and Pisor (together, the "*Doe* Plaintiffs"), and Maglietta, Reid, and Victorious (together, the "*Maglietta* Plaintiffs") sued Musk, America PAC, and Group America for breach of contract and promissory estoppel under Pennsylvania law.  Doe himself, but not Pisor, raises a claim against all Defendants for violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"), *see* 43 P.S. § 260.1 *et seq.*  All Plaintiffs bring the above-captioned actions on behalf of themselves and, pursuant to Federal Rule of Civil Procedure 23, a putative class of others similarly situated.[3]  *See* Fed. R. Civ. P. 23.

Musk, America PAC, and Group America now move to dismiss the *Doe* Plaintiffs' Amended Complaint (the "*Doe* Complaint"), and the *Maglietta* Plaintiffs' Complaint (the "*Maglietta*" Complaint) for lack of standing pursuant to Rule 12(b)(1).  Alternatively, they seek dismissal on the grounds of improper venue pursuant to Rule 12(b)(3), and failure to state a

---

[2] Citing fears of political retribution and potential "threats to his personal safety," Doe moved to proceed under a pseudonym, which Motion the Court granted.

[3] Specifically, the *Doe* Plaintiffs seek to certify two classes: (1) "[a]ll persons registered to vote in Pennsylvania when they signed the America PAC petition who have not received the agreed-upon payments from Defendants"; and, (2) "[a]ll persons who successfully referred a Pennsylvania registered voter to sign the America PAC petition who have not received the agreed-upon payments or wages from Defendants."

The *Maglietta* Plaintiffs ask the Court to certify two different classes: (1) "[a]ll persons registered to vote in a swing state when they signed the America PAC petition who have not received the agreed-upon payments from Defendants"; and, (2) "[a]ll persons who successfully referred a swing state registered voter to sign the America PAC petition who have not received the agreed-upon payments or wages from Defendants."

claim upon which relief can be granted pursuant to Rule (b)(6). For the reasons that follow, Defendants' Motions shall be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

In the run-up to the 2024 Presidential Election, Elon Musk founded America PAC, a Political Action Committee registered with the Federal Election Commission. To bolster its canvassing efforts, America PAC launched an online petition program (the "Petition" or "Petition Program") in October 2024 with the goal of gathering one million signatures from registered swing-state voters to pledge their "support of the Constitution, especially freedom of speech and the right to bear arms." The Petition Program was heavily publicized, including at campaign events and on social media. To take just a few examples, on October 6, 2024, Musk posted the following message on X, the social media platform formerly known as Twitter, which message garnered over 55 million views:



Several days later, Musk took to X again and broadcasted a similar message, this time

drawing over 47 million views:



As the above posts spell out, Musk (via America PAC) offered to pay each registered

swing-state voter $47—an amount which was eventually increased to $100 for Pennsylvania

voters—in exchange for signing the Petition. And to sweeten the deal, Musk and America PAC

promised to give signatories an additional $47, later $100 in Pennsylvania, if they referred other

eligible voters to do the same. In an email sent to signatories after they filled out the Petition,

America PAC explained that the referrer would "receive a check" so long as the referee listed the

referrer's email address in the corresponding section of the form. A screenshot of the Petition,

which is referenced in the *Doe* Complaint and attached to the *Maglietta* Complaint, further

explains:

> If you signed this petition while a $47 or $100 payment offer was active and met
> the criteria of state, voter registration status, and/or confirmed referrals, your
> payment is being processed. Due to volume, all payments are expected to be issued
> on or before November 30, 2024. Before payment is made, America PAC will
> verify the accuracy of all information of the referrer and referee. Payments of $600
> or more will require the referee to provide a signed IRS W-9 so an IRS 1099 can
> be issued. To be eligible, both the referrer and the petition signer must be registered
> voters of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or

Wisconsin.

Doe, Reid, Pisor, Maglietta, and Victorious aver that although they "accepted Defendants' offers by signing or successfully referring registered voters" to sign the Petition, "Defendants have since failed to pay [them] in full for their signatures and referrals."  Doe, who lives and is registered to vote in Pennsylvania, worked as a paid canvasser for America PAC and Group America in the weeks leading up to the 2024 Presidential Election, promoting the Petition and encouraging eligible voters to sign it.[4]  Although he received his agreed-upon hourly wage from the canvassing program and "some" payments for Petition referrals, he maintains that Defendants still owe him approximately $20,000.  Their nonpayment allegedly caused him "significant emotional and physical distress" and "damage to his credit."  Pisor, Reid, Maglietta, and Victorious similarly recruited eligible voters to sign the Petition—albeit, not as paid canvassers like Doe.  Pisor, who lives and is registered to vote in Pennsylvania, and Reid, who resides in Nevada, claim that they too went unpaid for their referrals to the tune of several thousand dollars, while Maglietta, a Pennsylvania resident, and Victorious, a Georgia resident, submit that they have not received "the full promised amounts for the[ir] referrals."

## II.    LEGAL STANDARDS

Rule 12(b)(1) provides that a claim may be dismissed for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012).  A motion to dismiss for want of Article III standing is properly brought pursuant to Rule 12(b)(1) because Article III provides "jurisdictional limitation[s]" that implicate "the Court's power to hear" claims.  *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154-57 (3d Cir.

---

[4] Aside from a passing reference in the *Doe* Complaint that Doe himself worked as a paid canvasser, no other details are provided about the alleged nature and scope of the paid canvassing program, let alone how it interacted with the Petition Program.

2022); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  In evaluating a Rule

12(b)(1) motion, a court must first determine whether the movant presents a facial or factual

attack.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial

attack "contests the sufficiency of the pleadings."  *In re Schering*, 678 F.3d at 243.  As the

adjective suggests, such an attack considers a complaint on its face and asserts that "it is

insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not

present a question of federal law, or because there is no indication of a diversity of citizenship

among the parties, or because some other jurisdictional defect is present."  *Const. Party of*

*Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A factual attack, on the other hand,

"concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional

prerequisites."  *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up).  So, for

instance, "while diversity of citizenship might have been adequately pleaded by the plaintiff, the

defendant can submit proof that, in fact, diversity is lacking."  *Aichele*, 757 F.3d at 358.

Regardless of the type of attack at issue, the plaintiff, as the party invoking federal jurisdiction,

"bears the burden of establishing the elements of standing, and each element must be supported

in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with

the manner and degree of evidence required at the successive stages of the litigation."  *FOCUS v.*

*Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (citation omitted).

　　　Here, Defendants' Rule 12(b)(1) Motions are properly understood as facial attacks since

they assert that the pleadings lack sufficient factual allegations to establish standing.  *See In re*

*Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017).

Because a facial attack "relies solely on the pleadings," it is analyzed under "the same standard

of review [used] when assessing a motion to dismiss for failure to state a claim" under Rule

12(b)(6). *Finkelman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "The court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *In re Schering*, 678 F.3d at 243 (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)), with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief," *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).

### III.    DISCUSSION

#### A.    Standing

Because a District Court must assure itself of its subject matter jurisdiction in every case, *see Gayle v. Warden Monmouth Cnty. Corr. Inst*., 838 F.3d 297, 303 (3d Cir. 2016), Defendants' standing challenges shall be considered first, *see Wheeler v. Travelers Ins. Co*., 22 F.3d 534, 537 (3d Cir. 1994).

Article III of the United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "This means that federal courts cannot

---

[5] In their Briefs in Opposition to Defendants' Motion to Dismiss, Plaintiffs dust off the pleading standard articulated in *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991), arguing that "[a] complaint can only be dismissed if it appears to a certainty that no relief could be granted under *any set of facts which could be proved*." *Id.* (emphasis added). However, that standard, which found its genesis in *Conley v. Gibson*, 355 U.S. 41 (1957), was retired by the United States Supreme Court nearly twenty years ago in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and is no longer good law.

opine on legal questions in a vacuum." *Davis v. Hanna Holdings, Inc.*, 771 F. Supp.3d 552, 566 (E.D. Pa. 2025). Instead, courts "can entertain actions only if they present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-93 (2009)). To that end, at the outset of litigation, a plaintiff bears the burden of demonstrating they have standing to sue. *Id.* This requires a showing that: (1) the plaintiff suffered an injury in fact, *i.e.*, an invasion of a "legally protected interest" that is "concrete and particularized," and "actual or imminent"; (2) a causal connection exists between the injury and the complained-of conduct, namely, that the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party; and, (3) it is "likely," as opposed to "merely speculative," that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016).

### i. Injury in Fact

Here, Defendants first assert that the *Doe* and *Maglietta* Complaints should be dismissed for lack of standing because Plaintiffs have not pleaded an injury in fact. It is well-settled that "[m]onetary harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005); *see also Cook v. GameStop, Inc.*, __ F.4th __, 2025 WL 2250261, at *3 (3d Cir. Aug. 7, 2025) ("'Traditional tangible harms, such as physical harms and monetary harms,' are considered '[t]he most obvious' concrete injuries." (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021))). It follows, therefore, that in seeking to recover damages for payments allegedly owed to them by Defendants for either signing,[6] or referring

---

[6] Defendants argue that "Plaintiffs lack standing to represent a class of Eligible Voters who were not paid for signing the petition because Plaintiffs allege only nonpayment for making referrals" and have not claimed that "they signed the petition but were not paid for doing so[.]" But Defendants' contention is belied by allegations in both the *Doe* and *Maglietta* Complaints, which explicitly state: "Plaintiffs and Class Members accepted Defendants' offers by signing or successfully referring Pennsylvania registered voters to the America PAC petition. Defendants have

others to sign, the Petition, Plaintiffs have demonstrated a paradigmatic injury in fact. *See, e.g.*, *Sylvester v. Depositors Ins. Co.*, 481 F. Supp.3d 412, 418 (E.D. Pa. 2020) ("[A] plaintiff seeking to recover money she lost due to the breach of a contract to which she was a party has standing because monetary injuries ordinarily constitute an injury in fact and there is a common law basis for recovery for an injury arising from a breach of contract."); *Zaftr Inc. v. Kirk*, 760 F. Supp.3d 275, 283 (E.D. Pa. 2024) (same); *cf. Takeda Pharm. U.S.A., Inc. v. Spireas*, 400 F. Supp.3d 185, 205 (E.D. Pa. 2019).

Defendants contend, however, that Plaintiffs have not pleaded a "concrete, particularized injury-in-fact" because they have not set forth any facts specifying how many voters they referred, let alone the number of successful referral claims that remain unpaid. But such a showing is unnecessary at this stage, as the Third Circuit has held that "the injury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (cleaned up). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted) (alteration in original). Thus, by alleging that Defendants owe them money for unpaid signature or referral payments, Plaintiffs have satisfied their burden at this stage.

---

since failed to pay Plaintiffs and Class Members in full *for their signatures and referrals*." Although those paragraphs do not identify each individual by name, given the procedural posture, the Court will interpret the allegations in the light most favorable to Plaintiffs (*i.e.*, that Doe, Pisor, Maglietta, Reid, and Victorious all signed the Petition and have yet to receive full payment therefor). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Accordingly, Defendants' Rule 12(b)(1) Motion shall be denied in this respect.

Undeterred, Defendants contend that Plaintiffs' proffered injury is neither actual nor imminent since Plaintiffs "have not even cursorily pled that they have met the[] basic (and undisputed) requirements necessary for a referrer to be eligible for a referral payment under America PAC's petition program." Those requirements purportedly include that: (1) the referee list the referrer when completing the Petition; (2) the referrer and referee are both eligible voters; and, (3) for payments of $600 or more, the referrer submit a signed IRS W-9 to Defendants.

But that line of argument—in essence, that Plaintiffs failed to satisfy various conditions precedent to performance—raises questions that fundamentally go to the merits of their breach of contract claims, *see, e.g.*, *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc*., 247 F. App'x 403, 405 (3d Cir. 2007) (collecting cases), and "a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion," *CNA*, 535 F.3d at 144; *see also Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) ("We have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits."). "Although standing and merits questions may involve overlapping facts, standing is generally an inquiry about the plaintiff" that asks: "is this the right person to bring this claim[?]" *Davis*, 824 F.3d at 348. Rather than contending that Plaintiffs are the wrong entity to bring this action, however, Defendants' Rule 12(b)(1) Motion instead amounts to an argument that Plaintiffs' claims "are actually without merit" because Defendants have "done nothing wrong." *Id.* at 349. Whether Defendants have, or have not, done anything wrong is the central question at issue here. But, in ruling on their Rule 12(b)(1) Motion, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

### ii.    *Causation*

Defendants' next focus is on Musk and Group America: they argue that Plaintiffs have

not alleged any relevant activity that could be fairly traceable to them as it pertains to payments owed under the Petition Program.  The Third Circuit has "yet to articulate a single standard for establishing this causal relationship."  *New Jersey Bankers Ass'n v. Att'y Gen. New Jersey*, 49 F.4th 849, 855 n.1 (3d Cir. 2022) (internal quotation marks omitted).  It has explained, nonetheless, that the "causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim.  Rather, an indirect causal relationship will suffice, so long as there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant."  *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (citation and internal quotation marks omitted).

Starting first with Musk, Defendants argue that "Plaintiffs allege no conduct by Musk in managing or executing America PAC's petition program or approving or issuing payments thereunder."  Plaintiffs counter by pointing to specific allegations leveled in the pleadings that Musk: (1) founded America PAC; and, (2) posted various messages on X on encouraging registered swing-state voters to avail themselves of the Petition Program in exchange for $47 or $100.  Specifically, the first message "retweeted" a screenshot of the Petition and stated that "[f]or every person you refer who is a swing state voter, you get $47!  Easy money," while the second provided: "[i]f you're a registered Pennsylvania voter, you & whoever referred you will now get $100 for signing our petition in support of free speech & right to bear arms.  Earn money for supporting something you already believe in!  Offer valid until midnight on Monday."  Taken together, Plaintiffs maintain that those allegations are sufficient to establish the requisite causal connection at this stage.

And, indeed, the allegations of the *Doe* and *Maglietta* Complaints are that such a connection exists between Plaintiffs' complained-of injury—unpaid signature and referral

11

payments—and the challenged conduct implicating Musk—failure to remit those payments. Both Complaints plausibly allege that Musk played a role in "managing or executing America PAC's petition program" as he publicly offered, on at least two occasions, to disburse $47 or $100 in exchange for participation.  Put differently, absent Musk's decision to launch America PAC and publicize the Petition Program, "there would be no injury."  *Mielo v. Steak 'n Shake Opers., Inc.*, 897 F.3d 467, 481 (3d Cir. 2018); *see also Hassan v. City of New York*, 804 F.3d 277, 293 (3d Cir. 2015).  And, although the pleadings do not shed light on Musk's role, if any, in deciding whether to withhold any payments from Plaintiffs, such an allegation is not necessary to succeed on this prong of the standing inquiry because the pleadings raise the plausible inference that "an indirect causal relationship" exists.  *See Toll Bros.*, 555 F.3d at 142.

The same cannot be said of Group America, however.  All the *Doe* Complaint alleges regarding that organization is that Doe himself "worked as a canvasser" for Group America, which "is a corporate entity with a principal place of business in Austin, Texas," leading up to the 2024 Presidential Election.  The *Maglietta* Complaint is even more threadbare in this respect, as it merely alleges that the organization operates in Texas.  Without an explanation of how Group America is remotely related to America PAC or Musk—the defendants who allegedly had the ability to remit payments in furtherance of the Petition Program—the Court cannot conclude that any causal relationship exists between "the alleged injury in fact and the alleged conduct of th[at] defendant."  *Id.*

### iii.       *Redressability*

Finally, Defendants assert that Plaintiffs have not demonstrated that it is "likely," as opposed to "merely speculative," that their complained-of injury will be redressed by a favorable decision as to any Defendant.  *See Lujan*, 504 U.S. at 560.

As a threshold matter, the Court need not address that argument with respect to

Defendants' Motion to Dismiss the *Doe* Complaint, as Defendants invoked redressability (and the purported lack thereof) for the first time in their reply brief rendering that issue waived.  *See Stern v. Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief."); *see also Prometheus Radio Project v. FCC*, 824 F.3d 33, 53 (3d Cir. 2016) (same).

Regarding the *Maglietta* matter, Defendants rehash the same points they raised regarding the purported lack of an injury in fact—namely, that because Plaintiffs did not "allege that any Defendant was required to pay for such referrals, Plaintiffs have not pled any injury that the Court can redress."  But that argument fails because, as explained above, it is essentially a challenge to the merits of Plaintiffs' breach of contract claim, *see Chemtech Int'l, Inc.*, 247 F. App'x at 405, and the Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits."  *Davis*, 824 F.3d at 348.

*   *   *

In sum, Defendants' Rule 12(b)(1) Motion shall be denied in part and granted in part.  It shall be denied with respect Defendants' arguments that: (1) Plaintiffs failed to demonstrate an injury in fact that is fairly traceable to Musk and America PAC; and, (2) it is "merely speculative" that said injury will be redressed by a favorable decision.  Defendants' Motion shall be granted, however, with respect to their argument that Plaintiffs have not adequately established that a causal connection exists between their complained-of injury and the challenged conduct implicating Group America.  Accordingly, Group America shall be dismissed from the *Doe* and *Maglietta* Complaints without prejudice.  *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (explaining that dismissals for lack of subject-matter jurisdiction

13

shall be made without prejudice).

### B.    Venue

Turning next to Defendants' Rule 12(b)(3) Motion, which Motion they bring only with respect to the *Maglietta* Complaint.  Defendants contend that, pursuant to 28 U.S.C. § 1391(b)(2), venue is improper in the Eastern District of Pennsylvania because "a substantial part of the events" giving rise to Plaintiffs' claims occurred outside of this judicial district.  In Defendants' view, that purported venue defect compels dismissal of the *Maglietta* Complaint or, in the alternative, transfer of the action to the Western District of Texas.

The purpose of venue "in most instances . . . is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (citation and internal quotation marks omitted). To that end, 28 U.S.C. § 1391(b) provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.*  Rule 12(b)(3) provides that a claim may be dismissed for improper venue.  Fed. R. Civ. P. 12(b)(3).  "Dismissal is considered to be a harsh remedy," though, so the "transfer of venue to another district court in which the action could originally have been brought . . . is the preferred remedy."  *Arkema Inc. v. Maviro Catalyst, Inc.*, 2025 WL 1346869, at *2 (E.D. Pa. May 8, 2025) (citing *Anderson v. TransUnion, LLC*, 2018 WL 334495, at *1 (E.D. Pa. Jan. 9, 2018)); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *cf. Lafferty v. St. Riel*, 495 F.3d

72, 77 (3d Cir. 2007).  "Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great Western Min. & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011); *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).  In evaluating Rule 12(b)(3) motions, all well-pleaded allegations set forth in the operative complaint must be accepted as true. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Under subsection (b)(2) of the venue statute, the phrase "substantial" does not mean that "a majority of the events" must have taken place in the plaintiff's chosen district. *Roche Diagnostics Corp. v. Smith*, 2022 WL 4596720, at *7 (D.N.J. Sept. 30, 2022) (cleaned up).  Nor does it contemplate that a given venue must be "the best forum for the action, as multiple districts could be proper," and "a plaintiff's choice of venue is accorded deference." *MacKay v. Donovan*, 747 F. Supp.2d 496, 502 (E.D. Pa. 2010).  Rather, the concept of "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute"; events or omissions "that might only have some tangential connection with the dispute in litigation are not enough." *Cottman*, 36 F.3d at 294.

Here, Defendants assert that the Eastern District of Pennsylvania is an improper venue for this action because the supposed substantial events—Musk and America PAC's administration of the petition program—and omissions—their alleged failure to issue referral payments—which ostensibly gave rise to the *Maglietta* Plaintiffs' breach of contract and promissory estoppel claims occurred in Texas, not Pennsylvania.  It is undisputed that any failure to issue referral payments occurred in Texas.  Yet, other significant events took place in Pennsylvania—namely, Musk and America PAC's advertisements to registered voters in Pennsylvania about the offer to

participate in the Petition Program in exchange for $47 or $100[7]; and, Maglietta's acceptance of

that offer (*i.e.*, "signing and successfully referring registered voters to the America PAC

petition"). Those events have more than a mere "tangential connection with the dispute,"

because, as set forth more fulsomely below in Sections III.C and D, they bear on the central

elements of his breach of contract and promissory estoppel claims. *Id.* at 294.

      Nonetheless, citing *Cottman*, 36 F.3d at 295, Defendants argue that the law is clear that it

is the location of the *defendant's* conduct—not the *plaintiff's* activities or alleged injury—that

determines venue. But *Cottman* says no such thing. In that case, a Pennsylvania-based

franchisor sued a Michigan resident and a Michigan-based corporation in the Eastern District of

Pennsylvania alleging breach of a franchise agreement, unfair competition, and a violation of the

Lanham Act based on unauthorized use of trademarks. *Id.* at 292. The District Court, over an

objection by the Michigan entities, found venue to be proper in the Eastern District of

Pennsylvania because it was where the franchisor, among other things, filled orders for and

received payments from the Michigan entities and prepared various advertisements. *Id.* at 293.

On appeal, the Third Circuit vacated the District Court's judgment and transferred the matter to

the Eastern District of Michigan. *Id.* at 297. In so doing, it clarified that "[t]he test for

determining venue" pursuant to 28 U.S.C. § 1391(b)(2) "is not the defendant's contacts with a

particular district, but rather the location of those 'events or omissions giving rise to the claim,'"

and "the nature of the dispute" itself. *Id.* at 294-95 (citation and internal quotation marks

omitted). Applying that test, the Third Circuit found, in relevant part:

---

[7] Defendants submit that "Musk's X posts, cited as publicity efforts, were nationwide and not Pennsylvania-specific" such that the posts cannot tether the claims to this judicial district for purposes of the venue analysis. However, Musk's October 17, 2024 post, which is referenced in the *Doe* and *Maglietta* Complaints, undermines that contention, as he opens with a specific plea to Pennsylvania voters: "If you're a Pennsylvania voter, you & whoever referred you will now get $100 for signing our petition in support of free speech & right to bear arms. Earn money for supporting something you already believe in! Offer valid until midnight on Monday."

The contract on which [the franchisor] bases its state-law claims was executed and performed in Michigan. [The Michigan resident's] transmission repair center was located there. The telephone directories were issued and used there. Finally, the alleged unauthorized use of the trademarks at issue occurred in Michigan, not in Pennsylvania. It is obvious that most, if not all, of the significant events occurred in Michigan.

The omissions that [the franchisor] cites—[the Michigan resident's] failure to return various materials and failure to remit payments—actually occurred in Michigan, not in Pennsylvania. Even though the result was [the franchisor's] non-receipt of those items in Pennsylvania, the omissions bringing about this result actually occurred in Michigan. Although this conclusion may seem to hinge on a question of "whether the glass is half full or half empty," we fail to see how these omissions could "give rise" to the claims that [the franchisor] presents.

The sole event in the Eastern District of Pennsylvania of possible relevance to this case was [the franchisor's] preparation of advertisements for the Michigan Bell yellow pages. However, even this allegation is questionable because that work may have been performed solely in connection with the previously expired [ ] franchise, rather than that of [the entity at issue].

\* \* \*

The only events sufficiently substantial to give rise to [the franchisor's] present causes of action occurred in the Eastern District of Michigan. Therefore, as to [the Michigan resident], the objections to improper venue should have been sustained and the case transferred to Michigan.

*Id.* at 295. Thus, although the location of the defendants' conduct was certainly critical to—and ultimately dispositive in—resolving the venue challenge presented in *Cottman*, the Third Circuit in no way suggested that the location of the plaintiff's activities or alleged injuries was irrelevant. The plaintiff simply failed to marshal sufficient evidence demonstrating that a "substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Pennsylvania as opposed to the Eastern District of Michigan.

Defendants nonetheless submit that venue is "particularly improper where allegations concern a multi-state operation and the key events occur outside the forum." For instance, they contend that Pennsylvania "is only one of states at issue—representing, at most, one-seventh of

the jurisdictions implicated by [the *Maglietta*] Plaintiffs' claims." But "[a]s laid out in

*Cottman*," a plaintiff's chosen venue need not "have to have greatest connection to the cause of

action or be the 'best forum' for the action, as multiple districts could be proper based on the

operative facts," *Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*, 2009

WL 129740, at *2 (E.D. Pa. Jan. 13, 2009) (citing *Cottman*, 36 F.3d at 294); *see also MacKay*,

747 F. Supp.2d at 502 (same), so that argument fails to carry the day. Accordingly, Defendants'

Rule 12(b)(3) Motion shall be denied.

### C.    Breach of Contract

Proceeding finally to Defendants' Rule 12(b)(6) Motion, Defendants first assert that

Plaintiffs' have failed to plausibly state a breach of contract claim because Plaintiffs do not

"allege that [they] performed under the purported contract." To that end, Defendants suggest

that the "petition made clear that referral payments would not be made unless: (1) the Referee

lists the Referrer when completing the petition; (2) the Referrer and Referee were both Eligible

Voters who signed the petition; (3) America PAC was able to "verify the accuracy of all

information of the Referrer and Referee; and, (4) for payments of $600 or more, the Referrer

provide[s] a signed IRS W-9." In the absence of any allegations that Plaintiffs satisfied all those

requirements, which Defendants characterize as conditions precedent to performance,

Defendants contend that Plaintiffs' claim must fail.

To state a claim for breach of contract under Pennsylvania law, which all parties agree

applies here, a plaintiff must plausibly allege the following three elements: (1) the existence of a

contract, including its essential terms; (2) a breach of a duty imposed by the contract; and, (3)

resultant damages. *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003) (citing

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Citing *Frederico v.

Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007), Defendants contend that Plaintiffs must state a

fourth element to make out a breach of contract claim—specifically, "that the party stating the claim performed its own contractual obligations." But *Frederico* and its bespoke fourth element are of no moment to this action, as that opinion was decided under New Jersey law—not Pennsylvania law. *See, e.g.*, *Hunter v. Sterling Bank*¸750 F. Supp.2d 530, 539 (E.D. Pa. 2010) (noting that the Third Circuit applied New Jersey law in deciding *Frederico*); *Robertshaw v. Pudles*, 2013 WL 3976284, at *16 n.40 (E.D. Pa. Aug. 5, 2013) ("In some instances courts applying New Jersey law to breach of contract claims identify a fourth element to a breach of contract claim." (citing *Frederico*, 507 F.3d at 203)); *Rubenstein v. Dovenmuehle Mortg., Inc*., 2009 WL 3467769, at *8 (E.D. Pa. Oct. 28, 2009) ("To assert a breach of contract claim under New Jersey law, a plaintiff must allege '(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" (quoting *Frederico*, 507 F.3d at 203)).

In a similar vein, Defendants next maintain that a "breach of contract claim also fails when the plaintiff does not plead facts showing a breach, particularly where contractual obligations are contingent on conditions precedent." But again, the only case they cite for that point—*Robert Wood Johnson Univ. Hosp. at Hamilton, Inc. v. SMX Cap., Inc*., 2013 WL 4510005, at *4-7 (D.N.J. Aug. 26, 2013)—is inapposite because it too was decided under New Jersey law.

Against that backdrop, Defendants' argument is bereft of any references to Pennsylvania law. To be sure, in their reply briefs, Defendants cite *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 405 (3d Cir. 2007), a non-precedential Third Circuit opinion, for the proposition that "[a] complaint that alleges a breach of contract without averring [any] compliance with conditions precedent does not state a valid breach of contract claim" under

Pennsylvania law. *See Chemtech*, 247 F. App'x at 405 (citing *InfoComp, Inc. v. Electra Prods., Inc.*, 109 F.3d 902, 905-07 (3d Cir. 1997); *Franklin Interiors v. Wall of Fame Mgmt. Co*., 511 A.2d 761, 762 (Pa. 1986); *Jennison v. Aacher*, 193 A.2d 769, 772 (Pa. Super. 1963)).  But Defendants raise that point in a section pertaining to standing, and the Court will not repackage it as a defense to breach of contract. *Cf. Magalengo v. Pa. Interscholastic Athl. Ass'n*, 2025 WL 2200916, at *12 n.5 (E.D. Pa. Aug. 1, 2025) ("Waving languidly in the direction of an argument is not making one."); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp*., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived." (citing *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs*., 101 F.3d 939, 945 (3d Cir. 1996))).

   But even if it did, Defendants' contention fails for two additional reasons.  First, as explained above, an argument raised for the first time in a reply brief must be deemed waived. *See Stern*, 158 F.3d at 731 n.3; *Prometheus Radio Project*, 824 F.3d at 53.  Second, assuming *arguendo* that Pennsylvania law requires a plaintiff stating a breach of contract claim to plead "compliance with conditions precedent," *see Chemtech*, 247 F. App'x at 405, the *Doe* and *Maglietta* Plaintiffs do indeed aver that all relevant conditions precedent have occurred or been performed.  Specifically, they allege: "Plaintiff and Class Members accepted Defendants' offers by signing or successfully referring registered voters to the America PAC petition.  Defendants have since failed to pay Plaintiffs and Class Members in full for their signatures and referrals." Because the Doe and *Maglietta* Complaints must be viewed in the light most favorable to Plaintiffs, *see Fowler*, 578 F.3d at 210-11, the Court will construe Plaintiffs' allegation that they "successfully referr[ed]" eligible voters to mean that they complied with any conditions precedent to payment under the Petition Program.  Although Defendants quibble over the exact

phrasing of those allegations,[8] at this stage, to the extent that they are required, general averments regarding conditions precedent are sufficient under Rule 9. *See* Fed. R. Civ. P. 9 ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."); *cf. Chemtech*, 247 F. App'x at 405 n.1 (observing that, in light of Rule 9, the "omission" of any allegations regarding a plaintiff's compliance with conditions precedent would be fatal to a breach of contract claim at the pleading stage). Here, the Plaintiffs have not omitted reference to successful completion of any conditions precedent, they have just not done so in the manner in which the Defendants think they should; but, that is not the standard by which a court must sieve through the allegations on a Motion to Dismiss.

Accordingly, Defendants' Motions to Dismiss Plaintiffs' breach of contract claims shall be denied.

### D.    Promissory Estoppel

Defendants also move to dismiss Plaintiffs' promissory estoppel claim, asserting that Plaintiffs "have not set forth facts sufficient to establish that [they] reasonably relied on any purported promise by any Defendant" or that injustice would arise from denying "payment for referrals."

"Promissory estoppel is an equitable doctrine that may be invoked to enforce a promise that one party makes to another even in the absence of an enforceable agreement between the parties." *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 100 (3d Cir. 2016) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)). "In order to maintain an action

---

[8] For instance, Defendants contend that Plaintiffs did not allege that America PAC failed to remit payments for valid or successful referrals—just that the referrals themselves were successful. As Defendants put it, "in the absence of allegations sufficient to establish that Plaintiffs complied with the terms of the petition as to their allegedly unpaid referrals—and that America PAC failed to pay Plaintiffs for valid (or, in Plaintiffs' words, "successful") referrals— Plaintiffs have not stated that America PAC breached any contract, or that Plaintiffs themselves upheld their end of the bargain." But to quote Justice Kagan, Defendants are, with that argument, "slicing the baloney mighty thin." *Sessions v. Dimaya*, 584 U.S. 148, 161 (2018).

in promissory estoppel, the aggrieved party must show that (1) the promisor made a promise that

he should have reasonably expected to induce action or forbearance on the part of the promisee;

(2) the promisee actually took action or refrained from taking action in reliance on the promise;

and (3) injustice can be avoided only by enforcing the promise." *Crouse*, 745 A.2d at 610; *see*

*also Pratter v. Penn Treaty Am. Corp.*, 11 A.3d 550, 562 (Pa. Commw. 2010).  "These factors

are strictly enforced to guard against the 'loose application' of promissory estoppel." *Peluso v.*

*Kistner*, 970 A.2d 530, 533 (Pa. Commw. 2009) (quoting *Fried v. Fisher*, 196 A. 39, 43 (Pa.

1938)).

   "[I]n Pennsylvania, [a] promissory estoppel claim can only exist in the absence of a

contract." *W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp.3d 211, 222 (E.D.

Pa. 2017); *see also Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).

Although courts have held that breach of contract and promissory estoppel may be pleaded in the

alternative, *see, e.g.*, *Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa.

1995), where the plaintiff "explicitly moves . . . to enforce the terms" of an agreement, and

neither party "challenge[s] [its] validity," a promissory estoppel claim must be dismissed. *W.*

*Chester Univ. Found.*, 259 F. Supp.3d at 222; *see also U.S. Bank Nat'l Ass'n v. B-R Penn Realty*

*Owner, L.P.*, 2021 WL 2778553, at *3 (E.D. Pa. July 1, 2021), *aff'd*, 2024 WL 4284933 (3d Cir.

Sept. 25, 2024) ("Borrower expressly avers that the parties entered a binding Forbearance

Agreement, which agreement is attached to [the] Complaint.  Because there is no dispute

regarding the existence or validity of the contract, Borrower's claim for promissory estoppel will

be dismissed."); *Devin Dalessio Trucking, LLC v. Progressive Corp.*, 639 F. Supp.3d 530, 537

(W.D. Pa. 2022) ("Plaintiff specifically pleads that an enforceable contract existed between the

parties and that Defendants wrongfully cancelled that contract.  As such, there is no basis to

maintain a claim of promissory estoppel.").

Here, Plaintiffs allege that there was a binding contract between them and Defendants for the payment of $47 or $100, the terms of which contract Plaintiffs seek to enforce through their breach of contract claims. Because neither party disputes the enforceability of that agreement, Plaintiffs' promissory estoppel claims, which were not pleaded in the alternative, cannot survive and thus shall be dismissed without prejudice. *See, e.g.*, *W. Chester Univ. Found.*, 259 F. Supp.3d at 222; *U.S. Bank Nat'l Ass'n*, 2021 WL 2778553, at \*3; *Devin Dalessio Trucking, LLC*, 639 F. Supp.3d at 537. Accordingly, Defendants' Motions to Dismiss shall be granted in this respect.[9]

### E.    Pennsylvania Wage Payment and Collection Law

Finally, Defendants move to dismiss Doe's WPCL claim,[10] which alleges that Defendants failed to pay him the "$47 and $100 wages or wage supplements" that he was owed in his capacity as a paid canvasser, on the grounds that: (1) he has not pleaded an employer-employee relationship with any Defendant; and, (2) the alleged unpaid referral fees do not constitute wages under the statute.

Starting with Defendants' first argument, "[t]he WPCL requires employers, among other things, to pay to employees' wages and agreed-upon fringe benefits in a regularly scheduled manner and by lawful money or check and to make only lawful deductions from employees' pay." *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 319-20 (3d Cir. 2016) (citing 43 P.S. §§ 260.3-.4). The statute "gives employees the right to institute a civil action to recover

---

[9] Pursuant to Rule 15(a)(2), the *Doe* and *Maglietta* Plaintiffs shall be permitted to amend their Complaints to plead a promissory estoppel claim in the alternative. *See* Fed. R. Civ. P. 15(a)(2). Or, to the extent they choose to stand on their pleadings and Defendants eventually challenge the existence of a contract on summary judgment, the *Doe* and *Maglietta* Plaintiffs shall be permitted, also under Rule 15(a)(2), to amend their Complaints for the limited purpose of raising a promissory estoppel claim. *See id.*

[10] As explained above, only Doe himself, and not Pisor, brings a WPCL claim in the *Doe* Complaint.

wages owed" thereunder. *Id.* at 320 (citing 43 P.S. § 260.9a(a)). That said, "[t]he WPCL applies *only* to employees," and "not to independent contractors." *Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 798 (3d Cir. 2010) (citing *Morin v. Brassington*, 871 A.2d 844, 850 (Pa. Super. 2005)) (emphasis added). Thus, to plausibly state a claim under the WPCL, a plaintiff must "qualify as an employee covered by the [l]aw." *McGoldrick v. TruePosition, Inc.*, 623 F. Supp.2d 619, 628 (E.D. Pa. 2009); *cf. Carr v. Flowers Foods, Inc.*, 2019 WL 2027299, at *15 (E.D. Pa. May 7, 2019).

To complicate matters, the statute does not define what it means to be an "employee" or "independent contractor," and the Pennsylvania Supreme Court has not yet addressed the issue. In the absence of such guidance, the Third Circuit has observed that lower courts in Pennsylvania which have previously considered WPCL claims "have looked to similar statutes such as the Pennsylvania Unemployment Compensation Act and the Pennsylvania Workers' Compensation Act," both of which employ a multi-factor test to determine an individual's employment status. *Williams*, 837 F.3d at 320-21 (citing *Morin*, 871 A.2d at 849; *Frank Burns, Inc. v. Interdigital Commc'ns Corp.*, 704 A.2d 678, 680 (Pa. Super. 1997)). Those factors include:

> the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

*Morin*, 871 A.2d at 850 (quoting *Lynch v. Workmen's Comp. App. Bd.*, 554 A.2d 159, 160 (Pa. Commw. 1989)). Based on that authority, the Third Circuit "predict[ed] that the Pennsylvania Supreme Court would employ this test in the context of the WPCL." *Williams*, 837 F.3d at 321; *see also id.* at 320 (noting that "[t]he applicability of this multifactor test to the WPCL is bolstered by the use of the same factors by the Pennsylvania Supreme Court to distinguish

between employees and independent contractors in the context of vicarious liability" (citing *Hammermill Paper Co. v. Rust Eng'g Co*., 243 A.2d 389, 392 (Pa. 1968)); *see also Carpenter v. Pepperidge Farm, Inc*., 2024 WL 2103257, at *1 (3d Cir. May 10, 2024) (reaffirming the use of the multi-factor test described in *Williams* to classify an individual's employment status under the WPCL).

Here, Defendants argue that Doe's WPCL claim should be dismissed because he has not pleaded any facts that could plausibly support the existence of an employer-employee relationship under the multi-factor test. All Doe offered were the "bare-bones" allegations that he "worked as a canvasser for Defendants America PAC and Group America, LLC" and was "jointly employed" by those two entities. Those allegations are insufficient to state a WPCL claim, assert Defendants, because they do not speak to whether any Defendant, among other things, exerted control over the manner in which Doe's work was to be performed; supervised any element of his work; provided him with any tools, training, or benefits; or, memorialized his employment agreement orally or through some written document.

In response, Doe contends that Defendants' reliance on the multi-factor test articulated in *Morin* and *Williams* is "misplaced." *Morin*, in Doe's reading, only "addressed employee status under the Workers' Compensation Act," and "not the WPCL." And the reasoning underpinning *Williams* is purportedly inapposite because it was decided in the context of a class certification motion, and not at the pleading stage. But those arguments are unavailing. First, Doe's interpretation of *Morin* ignores the plain text of that opinion, which, in relevant part, provides:

> Despite its dismissal of the issue on the basis of specificity, the trial court concluded that the WPCL would not apply to this case because Morin was not an "employee" of Brassington. We agree.

\*    \*    \*

> Therefore, we have little difficulty in concluding, as did the trial court, that Morin's working relationship with Brassington was that of an independent contractor and not an employee. *See, e.g., Lynch*, 554 A.2d at 160 (paramount for court's concern in determining existence of employer-employee relationship is whether putative employer had right of control over manner of work performed by putative employee). Because the statutory penalties set forth in the WPCL only apply to "employees," Morin was not entitled to them. *See Interdigital Comm. Corp*., 704 A.2d at 680 (Superior Court utilizes definition of "employee" in Workers' Compensation Act and Unemployment Compensation Act when analyzing WPCL). Consequently, Morin's argument fails.

*Morin*, 871 A.2d at 849-50. Doe's argument regarding the applicability of *Williams* fares no better, as the Third Circuit in no way limited its analysis of the WPCL to motions for class certifications. Instead, it issued a general "predict[ion] that the Pennsylvania Supreme Court would employ [the multi-factor] test in the context of the WPCL," *see Williams*, 837 F.3d at 321—a holding that has been reiterated as recently as last year in a case resolving a motion for summary judgment, *see Carpenter*, 2024 WL 2103257, at *1-2.

Doe's only other argument is that this Court must accept his allegation that he is an employee as true with no further analysis. Not so. Under the familiar standard for analyzing a Rule 12(b)(6) Motion, legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a plausible claim for relief. *See Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 679). Under the WPCL, however, "[w]hether a worker is an employee or an independent contractor . . . is a mixed question of fact and law." *Carpenter*, 2024 WL 2103257, at *2 (citing *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019)). "The factual component addresses the underlying facts reflecting 'economic relations' between the parties, while the legal component addresses 'whether those facts make a worker an employee or independent contractor.'" *Id*. (quoting *Verma*, 937 F.3d at 229). Here, in that his Complaint contains no factual allegations regarding the nature of his work relationship with any of the Defendants, Doe's allegation that he is an employee under the WPCL is, in

26

substance, "a legal conclusion couched as a factual allegation," which the Court is "not compelled to accept" on its face.  *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (citation omitted).

Because Doe fails to respond or otherwise meaningfully engage with any of Defendants' arguments regarding his employment status under the WPCL, their Motions to Dismiss shall be granted as uncontested in this respect.  *See Skold v. Galderma Lab'ys, L.P.*, 99 F. Supp.3d 585, 598 (E.D. Pa. 2015) ("Where an issue of fact or law is raised in an opening brief" but is subsequently "uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue." (citing *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F.Supp.2d 765, 773 (E.D. Pa. 2011))); *see also Young v. St. Luke's Hosp.*, 2010 WL 1348468, at *6 (E.D. Pa. Mar. 30, 2010) ("Parties who fail to adequately brief their opposition to motions do so at the risk of having those motions granted as uncontested.").

Accordingly, Doe's WPCL claim shall be dismissed without prejudice.

## IV.    CONCLUSION

In sum, Defendants' Rule 12(b)(1) Motions shall be denied with respect to Musk and America PAC, and granted with respect to Group America, which entity shall be dismissed from the *Doe* and *Maglietta* Complaints without prejudice.  Defendants' Rule 12(b)(3) Motion shall be denied, while their Rule 12(b)(6) Motions shall be denied with respect to Plaintiffs' breach of contract claim and granted with respect to Plaintiffs' promissory estoppel and WPCL claims, both of which claims shall be dismissed without prejudice.

An appropriate order follows.


**BY THE COURT:**

27

**S/ WENDY BEETLESTONE**

_____

**WENDY BEETLESTONE, C.J.**