**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **JOHN DOE AND BOBBI PISOR,** | : | |
| | : | |
| | : | |
| *Plaintiffs*, | : | No. 2:25-cv-01691-WB |
| v. | : | |
| | : | |
| **AMERICA PAC; GROUP AMERICA, LLC; AND ELON MUSK** | : | |
| | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE UNDER RULE 12(f) AND DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

## Table of Contents

I.   Introduction ..................................................................................................... 1

II.  Factual Background ........................................................................................ 3

   A.   The Parties ................................................................................................ 3

   B.   America PAC's Citizen Petition Program ................................................ 4

   C.   Procedural History and The Second Amended Complaint ......................... 6

III. Argument and Authority ................................................................................. 7

   A.   Motion to Strike Unauthorized Portions of Plaintiffs' Second Amended Complaint. . 7

   B.   Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6). ............................ 9

      i.   The Second Amended Complaint should be dismissed under Rule 12(b)(1) because Plaintiffs lack Article III standing. ......................................... 9

         a.   Plaintiffs lack Article III standing to sue for alleged signature nonpayment ................................................................................. 10

         b.   Group America should be dismissed under Rule 12(b)(1) because Plaintiffs plead no facts tracing any alleged payment shortfall to Group America. ............................................................................ 13

      ii.  The Second Amended Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state claims upon which relief may be granted. ......... 15

         a.   Plaintiffs fail to state a claim for breach of contract or promissory estoppel because they do not allege facts that could plausibly support any unmet duty to pay. .............................................................. 16

         b.   Plaintiffs' breach of contract and promissory estoppel claims should be dismissed as to Mr. Musk specifically because Plaintiffs plead no privity or clear personal promise, and no facts that could justify the extraordinary remedy of piercing the corporate veil. ...................................... 18

         c.   Plaintiffs' breach of contract and promissory estoppel claims should be dismissed as to Group America because Plaintiffs failed to plead any contractual obligation or clear, definite promise by Group America to pay any Program amounts. .......................................................... 20

         d.   Doe's WPCL claim should be dismissed for failure to state a claim........ 21

IV.  Conclusion ..................................................................................................... 27

## Table of Authorities

**Cases**

*3909 Realty LLC v. City of Philadelphia Dep't of Licenses & Inspections*, No. 22-2593, 2023 WL 3752002 (3d Cir. June 1, 2023) .................................................................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 17, 18, 19, 21

*Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997) ............................................... 26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................ 17, 18

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Pa. Super. 2011) ..................................... 23, 24, 25

*Bricklayers & Allied Craftworkers Loc. 1 of Pa/De v. ARB Constr., Inc.*, No. CV 13-3883, 2016 WL 1161528 (E.D. Pa. Mar. 23, 2016)................................................................ 20

*Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717 (E.D. Pa. 2014)............................................ 21

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .................................................... 18

*Chand v. Merck & Co.*, No. CV 19-0286, 2019 WL 3387056 (E.D. Pa. July 26, 2019) ....... 18, 20

*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403 (3d Cir. 2007)......... 18, 20

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016).................................................. 18, 19

*Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 3992960 (M.D. Pa. Sept. 4, 2012) ...... 26

*Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978)................................................... 21

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016)................................. 11, 12, 13

*Franklin Interiors v. Wall of Fame Mgmt. Co.*, 511 A.2d 761 (Pa. 1986) ................................. 18

*Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167 (2000).......................... 12

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990)............................................................. 12

*Green v. Golla Ctr. For Plastic Surgery, P.C.*, 2019 WL 1083688 (W.D. Pa. 2019).................. 28

*In re Niaspan Antitrust* Litigation, 2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ........................ 13

*In re Schering Plough Corp. Intron*, 678 F.3d 235 (3d Cir. 2012)............................................. 11

*In re Wolf*, 556 B.R. 676 (Bankr. E.D. Pa. 2016) ................................................................. 21

*Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59 (Pa. Super. 2000) ....................................... 24, 25

*Labar Vill. Cmty. Ass'n, Inc. v. VFG-LaBar, L.L.C.*, No. CV 3:08-1010, 2008 WL 11367896 (M.D. Pa. Aug. 1, 2008) ............................................................................................. 21

*Leon v. Hanoch*, No. 24CV1060, 2024 WL 3637794 (E.D. Pa. Aug. 2, 2024)............................. 9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................... 11, 12, 15

*Lumax Indus., Inc. v. Aultman*, 669 A.2d 893 (Pa. 1995)............................................................ 21

*Mangan v. Robbins*, No. CIV.A. 12-2462, 2013 WL 460289 (E.D. Pa. Feb. 7, 2013) ................ 12

*Mohney v. McClure*, 568 A.2d 682 (Pa. Super. 1990) ................................................................. 26

*Morin v. Brassington*, 2005 PA Super 107, 871 A.2d 844 (Pa. Super. Ct. 2005) ...... 23, 26, 27, 28

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015) ............................................. 12

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) ............................................. 21

*Potter v. Cozen & O'Connor*, 46 F.4th 148 (3d Cir. 2022) ......................................................... 11

*Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577 (E.D. Pa. 1985) ........................................... 24, 25

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ........................................................... 12

*Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793 (3d Cir. 2010) ............................................ 23

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. 2005) ................................. 19

*Tomlinson v. Checkpoint Sys., Inc.*, No. CIV.A. 06-2205, 2008 WL 219217 (E.D. Pa. Jan. 25, 2008) ....................................................................................................................... 23, 27, 28

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..................................................................... 12

*Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003) ........................................................... 19

*Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir. 1990) ............................................................... 23, 24

*Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314 (3d Cir. 2016) ....................................... 26, 28

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022) ........................................ 11

*Zubik v. Zubik*, 384 F.2d 267 (3d Cir.1967) ............................................................................... 21

## Statutes

43 P.S. § 260.1, *et seq.* .............................................................................................................. 23

43 P.S. § 260.2a ..................................................................................................................... 24, 26

## Rules

Fed. R. Civ. P. 12 ....................................................................................................................... 11

Fed. R. Civ. P. 15 ......................................................................................................................... 9

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 17

Fed. R. Civ. P. 9 ......................................................................................................................... 18

## Treatises

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1484 (3d ed. 2024) ................................................................................................................................................ 9

Defendants America PAC, Group America LLC ("Group America"), and Elon Musk, by and through their undersigned counsel, respectfully move to 1) strike portions of Plaintiffs' Second Amended Class Action Complaint (ECF No. 40, "Sec. Am. Compl.") that violate Federal Rule of Civil Procedure 15(a)(2); and 2) dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, the Court should strike the defendant, claims, and allegations Plaintiffs improperly included in the Second Amended Complaint without leave of Court and dismiss the balance of this case under Rules 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.

## I.    <u>Introduction</u>

In October 2024, America PAC, a political action committee registered with the Federal Election Commission, encouraged registered voters in Pennsylvania, Arizona, Michigan, Georgia, Nevada, North Carolina, and Wisconsin ("Eligible Voters") to sign a citizen petition supporting the Constitution's First and Second Amendments – issues that were highly relevant in that year's election. Verified Eligible Voters in Pennsylvania who signed the petition could earn $47 (or, depending on when they signed, $100). Each verified Pennsylvania Eligible Voter who signed the petition and also referred (the "Referrer") another verified Pennsylvania Eligible Voter (the "Referee") to sign the petition had an additional opportunity to earn. Specifically, once verified as an eligible Referrer of an eligible Referee, America PAC paid the Referrer $47 (and, later, $100) per eligible referral (the "Program").

Plaintiffs John Doe and Bobbi Pisor claim that they participated in the Program. While neither alleges that they were not paid for signing the petition, each claims that they referred people to sign the petition and posits that they have not been "fully paid" for those purported referrals. The lack of details provided by Plaintiffs is glaring. Indeed, despite amending their Complaint

twice already, Plaintiffs have still not provided any details regarding: (i) how much they *have been* paid; (ii) when or how they were paid; (iii) how many people they referred; (iv) whether the persons they referred were Eligible Voters; or (v) whether the persons they referred listed Doe or Pisor in the referrer section on the petition. Plaintiffs have also provided absolutely no basis for their entirely conclusory claim that they are owed approximately $20,000 and $10,000 respectively.

Plaintiffs' meager allegations, lacking in detail and critical factual support, warrant dismissal of this action. As an initial matter, Plaintiffs' Second Amended Complaint far exceeded the limited leave granted in the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 36) to re-plead Plaintiffs' dismissed promissory estoppel claim as an alternative to their breach of contract claim. *Without* leave of Court, Plaintiffs re-added a dismissed Defendant, re-asserted dismissed causes of action, and included myriad new factual allegations unrelated to their re-pled promissory estoppel claim. Having already amended once as a matter of course, Plaintiffs were required by Rule 15(a)(2) to obtain leave before expanding the pleadings. They did not. The Court should strike all unauthorized portions of the Second Amended Complaint and leave only the authorized promissory-estoppel-in-the-alternative allegations.

Additionally, Plaintiffs' claims warrant dismissal under Rules 12(b)(1) and 12(b)(6). First, because neither Plaintiff alleges that they were not paid for *signing* the petition, Plaintiffs lack Article III standing to represent a putative class of purportedly unpaid petition signers. Their claims against Group America also fail at the threshold because the Second Amended Complaint still pleads no cognizable obligation by (or injury traceable to) that Defendant. Beyond lack of standing, Plaintiffs also fail to state claims upon which relief may be granted. With respect to their breach of contract and promissory estoppel claims, any disparity between actual and expected

payments would have turned on third-party actions outside Defendants' control—such as whether someone they referred to the petition actually signed, was eligible, and identified one of the Plaintiffs as their Referrer. Additionally, Plaintiffs have failed to plead any valid contract or clear, definite promise by Defendants Musk or Group America sufficient to maintain a breach of contract or promissory estoppel claim against them. Finally, Plaintiff Doe's claim under the Pennsylvania Wage Payment and Collection Law ("WPCL")—which the Court has already rejected—again fails because the referral payments at issue were not "wages or wage supplements" under the WPCL and because the Second Amended Complaint does not cure Doe's failure to plead an employer–employee relationship with Defendants Musk or Group America.

Accordingly, the Court should strike the unauthorized portions of their Second Amended Complaint and dismiss the remaining claims with prejudice.

## II.    Factual Background

### A.    The Parties

Defendant Elon Musk founded Defendant America PAC, an independent expenditure only political committee registered with the Federal Election Commission. Sec. Am. Compl. at 3, ¶¶ 10, 13.[1] Plaintiffs claim that Group America is "a corporate entity with a principal place of business in Austin, Texas" and that canvassers working for America PAC received W-2 forms from Group America. *Id.* at 3, ¶ 11.

Plaintiffs John Doe and Bobbi Pisor claim that they are registered Pennsylvania voters who reside in Bucks County and Butler County respectively. *Id.* at 2, ¶¶ 6, 8. Doe alleges that he worked as a canvasser who "referred many voters to sign the America PAC petition." *Id.* at 7, ¶ 27. While

---

[1] The numbered paragraph allegations in Plaintiff's Second Amended Complaint are labeled 1–35. These paragraph numbers restart at 1 on page 8 of the Second Amended Complaint. To avoid confusion, this brief cites both page and paragraph numbers.

Doe makes clear that "Defendants represented to Plaintiff Doe that he was hired by and would be working for America PAC," Doe argues that he was jointly employed by America PAC and Group America, because "paperwork related to his work" was provided to him by Group America. *Id.* at 6 ¶ 24. Doe claims that he was paid for his canvassing work, and "was paid some referrals for the petition signatures he obtained." *Id.* at 7, ¶ 29. However, Doe claims that he received some unspecified referral payments "late," and "estimates that he has not been paid at least $20,000 he is owed for his referrals." *Id.* Doe does not say how many referrals he made, whether the individuals he referred were Eligible Voters who listed Doe when completing the petition (and, if they were, how Doe knows this), or how much Doe has already been paid (or when). Doe also fails to provide any details about the basis for his "estimate" that he is owed $20,000.

Pisor claims that she, too, "referred many voters to sign the America PAC petition leading up to the November 2024 election," and that she "was not paid the full promised amounts for those referrals." *Id.* at 8, ¶¶ 34-35. Pisor "estimates that she has not been paid at least $10,000 she is owed for her referrals." *Id.* Pisor's allegations are similarly devoid of any further detail about her alleged referrals (or the eligibility of the individuals she referred), purported "partial" payments, or any explanation of the basis for her calculation that she is owed "at least $10,000." *Id.*

### B.    America PAC's Citizen Petition Program

Beginning in October 2024, visitors to America PAC's website could sign a "Petition in Favor of Free Speech and the Right to Bear Arms." *Id.* at 4, ¶ 16. America PAC encouraged those who signed the petition to refer others to do the same, and—according to Plaintiffs—offered "$47, later increased to $100, payment for each successful referral of a registered voter in Pennsylvania who signed the America PAC petition." *Id.* at 4–5, ¶¶ 17, 18, 21. Mr. Musk promoted America PAC's Program, including through an October 17, 2024 X post. *Id.* at 4–5, ¶ 19.

Plaintiffs do not allege that they had any written employment agreement with any Defendant. To the extent that Doe claims he was employed as a canvasser, he does not allege that referral payments were part of his agreed upon payment for canvassing work, or that referral payments were based on anything other than the referral program that was open to any verified Eligible Voter who signed the petition – whether working as an America PAC canvasser or not. *Id.* at 6, ¶¶ 24-26.

The Second Amended Complaint references two America PAC communications regarding the terms of the referral program. First, it references a message allegedly sent to people who signed the petition, stating:

> You signed the America PAC petition in support of the 1st and 2nd Amendments. That's awesome! Want to help more? Contact your friends and family in swing states and get them to sign the petition as well. You will receive a check for $47 for each eligible petition signer who lists your email address in the referrer section of their petition signature.

*Id.* at 5, ¶ 21.

Second, it incorporates by reference the following language from America PAC's website:

> SIGNER & REFERRER PAYMENT PROGRAMS 10/17 - 11/05 If you signed this petition while a $47 or $100 payment offer was active and met the criteria of state, voter registration status, and/or confirmed referrals, your payment is being processed. Due to volume, all payments are expected to be issued on or before Nov. 30, 2024. Before payment is made, America PAC will verify the accuracy of all information of the referrer and referee. Payments of $600 or more will require the referrer to provide a signed IRS W-9 so an IRS 1099 can be issued. To be eligible, both the referrer and the petition signer must be registered voters of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin.

ECF No. 1-1 at 2; *see also* Sec. Am. Compl. at 4, ¶ 16 (citing same).

Plaintiffs do not dispute that this accurately describes the Program, and the above language makes the criteria for payment clear. To be eligible to earn, a person had to be a registered voter in Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin ("Eligible

Voter"). *Id.* To earn for a referral, the Referee also had to be an Eligible Voter and had to list the Referrer's email address in the referrer section of their petition signature. *Id.*; *see also* Sec. Am. Compl. at 5, ¶ 21. Payment would not be issued unless America PAC was able to "verify the accuracy of all information of the referrer and referee," and "[p]ayments of $600 or more will require the referrer to provide a signed IRS W-9." ECF No. 1-1 at 2; *see also* Sec. Am. Compl. at 4, ¶ 16 (citing same).

### C.    Procedural History and The Second Amended Complaint

On April 1, 2025, Plaintiff Doe filed the Original Complaint (ECF No. 1) alleging unpaid referral payments arising from America PAC's petition program and asserting claims including breach of contract and promissory estoppel, as well as a claim under the WPCL. Doe amended as of right on April 22, 2025 (ECF No. 14), adding Plaintiff Bobbi Pisor to the breach of contract and promissory estoppel claims (but not the WPCL claim). Defendants moved to dismiss the First Amended Complaint on June 9, 2025 (ECF No. 28) and the Court granted in part and denied in part that motion in an August 26, 2025 Memorandum Opinion and Order (ECF Nos. 36–37). In doing so, the Court dismissed Group America from the case for lack of subject-matter jurisdiction under Rule 12(b)(1), dismissed Doe's WPCL claim under Rule 12(b)(6), and dismissed Plaintiffs' promissory estoppel claim because that equitable theory can only exist on its own if there is no alleged contract. In footnote 9 of the Memorandum Opinion, the Court granted Plaintiffs leave under Rule 15(a)(2) to amend their complaint, but only for the limited purpose of allowing Plaintiffs to plead promissory estoppel in the alternative.

On September 9, 2025, Plaintiffs filed a Second Amended Complaint (ECF No. 40) which not only re-pled Plaintiffs' promissory-estoppel claim in the alternative, but also—in violation of Rule 15(a)(2)—(i) reintroduced Group America as a defendant; (ii) reasserted Doe's WPCL claim;

6

and, (iii) asserted new factual matter and theories unrelated to any alternative promissory-estoppel claim.

## III.   **Argument and Authority**

### A.   **Motion to Strike Unauthorized Portions of Plaintiffs' Second Amended Complaint.**

Once a party has used its one amendment as of course, any further amendment may be made "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While Federal Rule 15(a) provides that leave to amend shall be given freely when justice so requires, a mere request embedded in an opposition to a motion to dismiss does not constitute a motion to amend within the contemplation of Rule 15(a). *See, e.g.*, *Leon v. Hanoch*, No. 24CV1060, 2024 WL 3637794, at *5 (E.D. Pa. Aug. 2, 2024) (quoting *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493-94 (3d Cir. 2017)).

Courts in this District routinely strike amended complaints filed without consent or leave. *See 3909 Realty LLC v. City of Philadelphia Dep't of Licenses & Inspections*, No. 22-2593, 2023 WL 3752002, at *1 (3d Cir. June 1, 2023) (dismissing appeal of lower court order striking second amended complaint filed "[w]ithout either the City's consent or the District Court's leave," and thus "did not comply with Rule 15."); *Complete Bus. Sols. Grp., Inc. v. Prot. Legal Grp., LLC*, No. 16-cv-4267, slip op. at 2–3 (E.D. Pa. Apr. 10, 2017) (Ditter, J.) (granting motion to strike) ("Because CBSG's Second Amended Complaint does not comply with Rule 15(a)(2), it will be stricken."); *see also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1484 (3d ed. 2024) ("[I]f an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect" and "will not be considered unless the amendment is resubmitted for the court's approval.").

Here, Plaintiffs had already amended once as a matter of right before Defendants' motion to dismiss the First Amended Complaint was granted in part and denied in part. In its order (ECF Nos. 36-37), the Court dismissed Group America from the case, dismissed Doe's WPCL claim, and dismissed Plaintiffs' promissory estoppel claim against all Defendants. Leave to amend, to the extent given, was granted in footnote 9 for the limited purpose of allowing Plaintiffs to re-plead their promissory estoppel in the alternative.

The Second Amended Complaint far exceeds that grant of leave. Beyond re-pleading their promissory-estoppel theory in the alternative, Plaintiffs (i) reintroduced Group America as a Defendant; (ii) revived Doe's WPCL claim; and (iii) expanded the pleading with new factual matter and theories unrelated to any alternative promissory-estoppel claim, including allegations meant to support the re-added party and the re-pleaded statutory count.

The dismissal "without prejudice" preserved only the opportunity for Plaintiffs to *seek* leave—it did not confer on Plaintiffs unilateral license to amend to add anything and everything they wanted. Having already used their one amendment as of course, Plaintiffs could only have amended their Complaint further by seeking written consent from Defendants or by seeking leave from the Court. They did neither.

Plaintiffs' unauthorized expansion prejudices Defendants and burdens judicial and party resources. Re-adding Group America, Doe's WPCL claim, and asserting new factual matters untethered to Plaintiffs' alternative promissory-estoppel theory inappropriately broadens this case's scope and disrupts the orderly adjudication of this case. None of this would be necessary had Plaintiffs sought leave and proffered a targeted amendment consistent with the Court's limited authorization. Allowing the end-run that the Second Amended Complaint reflects would unsettle

the Court's prior rulings and needlessly burden the parties and the Court with briefing on claims the Court has already pared back.

Defendants respectfully request that the Court strike the unauthorized portions of the Second Amended Complaint and leave only the promissory-estoppel-in-the-alternative allegations permitted by footnote 9.

### B.     Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6).

Beyond Defendants' Motion to Strike, for the following reasons the Second Amended Complaint should also be dismissed under Rules 12(b)(1) and 12(b)(6).

### i.     The Second Amended Complaint should be dismissed under Rule 12(b)(1) because Plaintiffs lack Article III standing.

Rule 12(b)(1) provides that a claim may be dismissed for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) (citations omitted) (cleaned up). A motion to dismiss for lack of Article III standing is properly brought pursuant to Rule 12(b)(1) because Article III provides "jurisdictional limitation[s]" that implicate "the Court's power to hear" claims. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154–57 (3d Cir. 2022); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The burden to establish standing rests with the plaintiffs and "failure to allege the elements of standing means that [federal courts] lack jurisdiction to adjudicate their claims." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 203 (3d Cir. 2016); *see also Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing and must 'clearly ... allege facts demonstrating each element.'") (citations omitted).

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must have: (1) suffered an injury in fact;

(2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision of the court (redressability). *Id.* at 560. *Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). As the party invoking a court's jurisdiction, the plaintiff must establish all three elements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

>   ### a.    Plaintiffs lack Article III standing to sue for alleged signature nonpayment.

Article III requires a concrete, particularized injury in fact that is fairly traceable to the defendant and likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. That requirement does not relax in putative class actions: "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431–32 (2021) (citations omitted) (cleaned up); *Mangan v. Robbins*, No. CIV.A. 12-2462, 2013 WL 460289, at *3 (E.D. Pa. Feb. 7, 2013). The fact that a suit is a class action "adds nothing to the question of standing," because "even named plaintiffs who represent a class must allege and show that they personally have been injured." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

The Third Circuit has consistently applied these precedents, recognizing that, "[i]n the context of a class action, Article III must be satisfied 'by at least one named plaintiff.'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 222, n. 9 (3d Cir. 2012)). Thus, "'[i]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" *Id.* (quoting *O'Shea*, 414 U.S.

at 494); *see also, e.g.*, *Finkelman*, 810 F.3d at 195 ("Absent standing on the part of the named plaintiffs, we must dismiss a putative class action for lack of subject matter jurisdiction.").

It is no surprise, then, that a named plaintiff cannot proceed on a theory of injury that he does not *personally* claim to suffer. *Finkelman v. Nat'l Football League* illustrates this principle. There, a plaintiff sued the NFL, claiming that the NFL's ticket policy injured him by preventing him from successfully purchasing a ticket at face value in the League's ticket lottery. 810 F.3d at 197. The District Court found that—because the plaintiff had not actually *entered* the ticket lottery—he lacked Article III standing to challenge it, and the Third Circuit agreed. *Id*. at 198. As the Court of Appeals explained, "any harm that Finkelman suffered is properly attributed not to the NFL, but rather to his own decision not to enter the ticket lottery." *Id*. The court further held that because the plaintiff himself lacked standing, he could not sue on behalf of a class of others who believed they had been injured by the NFL's ticket policy. *Id*. at 195.

Numerous other cases also show that a plaintiff has no standing to bring claims on behalf of a class when she did not suffer the concrete, particularized harm; traceable to the defendants; and redressable through the courts for which the class seeks to recover. For instance, in *In re Niaspan Antitrust Litigation*, end-payor plaintiffs asserted a nationwide array of state-law claims tied to purchases or reimbursements of the drug Niaspan. 2015 WL 8150588, at *1 (E.D. Pa. Dec. 8, 2015). The court dismissed all state-specific claims arising from laws of states where no named plaintiff resided or made Niaspan purchases/reimbursements for lack of Article III standing. *Id*. at *2. The court explained the requirement that "at least one named plaintiff has Article III standing to pursue each claim plaintiffs assert," and emphasized that a plaintiff who lacks the personalized, redressable injury to sue in his own right "would also lack standing to assert similar claims on behalf of a class." *Id*. at *3.

Here, the Second Amended Complaint never alleges that either Doe or Pisor is owed compensation for signing America PAC's petition. Instead, the only plaintiff-specific facts concern referrals. Doe alleges that he "<u>referred</u> many voters," that he "was paid some <u>referrals</u>," and that he "has not been paid at least $20,000 he is owed <u>for his referrals</u>." Sec. Am. Compl. at 7, ¶¶ 27, 29 (emphases added). Pisor likewise alleges that she "<u>referred</u> many voters" and that she "has not been paid at least $10,000 she is owed <u>for her referrals</u>." *Id*. at 8, ¶¶ 34–35 (emphases added). Neither alleges that any signer payment was withheld (in fact, neither Plaintiff affirmatively alleges having signed the petition *at all*). Under *O'Shea*, *Finkelman*, and *Niaspan*, a plaintiff who does not claim to have suffered an injury cannot satisfy Article III on behalf of a class with respect to such injury.

The class allegations only deepen the defect. Plaintiffs seek certification of a "signer" class—defined as "[a]ll persons registered to vote in Pennsylvania when they signed the America PAC petition who have not received the agreed-upon payments from Defendants." Sec. Amend. Compl. at 8, ¶ 2. Yet neither named plaintiff falls within that definition. Their own allegations are confined to referrals, and they admit they received at least some referral payments. *Id.* ¶¶ 27, 29, 34–35. Article III does not permit them to serve as representatives for a class premised on a different injury than the one they personally claim to have suffered.

For the avoidance of any doubt, Defendants acknowledge the Court's prior observation in its Memorandum Opinion that earlier pleadings could be construed—at that stage and in Plaintiffs' favor—to allege nonpayment for both signatures and referrals. *See* Mem. Op. 8 n.6, ECF No. 36 (construing the allegation that "Defendants have since failed to pay Plaintiffs and Class Members in full for their signatures and referrals" as encompassing both). With deference to the Court's reading of the First Amended Complaint's allegations, the operative Second Amended Complaint

merits reconsideration of this issue in light of its structure and plaintiff-specific facts, which demonstrate a fundamental standing deficiency.

Critically, the Court's prior footnote focused on the catch-all language that has been repeated in ¶ 4 here—"Defendants have since failed to pay Plaintiffs and Class Members in full for their signatures and referrals" (Sec. Am. Compl. at 2, ¶ 4)—but did not address this allegation in the context of the immediately preceding ¶ 3 (also repeated here), which employs a disjunctive "or" that introduces ambiguity regarding Plaintiffs' alleged injuries: "Plaintiffs and Class Members accepted Defendants' offers by signing *or* successfully referring Pennsylvania registered voters to the America PAC petition" (Sec. Am. Compl. at 2, ¶ 3, emphasis added). This "or" signals that acceptance (and thus injury) could stem from *either* signing *or* referring—not necessarily both. Given that ambiguity, it is necessary to look at the specific allegations regarding the alleged harm suffered by Plaintiffs Doe and Pisor in the body of the Second Amended Complaint, which make clear their only alleged injuries are non-payments for referrals. *Id.* at 7-8, ¶¶ 27-35.

Without a pled signer injury for Doe or Pisor, they lack standing to pursue those claims individually or on behalf of that putative class. Accordingly, this Court must dismiss all signer-based injury theories and signer-class allegations here.

### b. Group America should be dismissed under Rule 12(b)(1) because Plaintiffs plead no facts tracing any alleged payment shortfall to Group America.

Traceability is an essential element of Article III standing. *Lujan*, 504 U.S. at 560–61. The traceability inquiry is defendant-specific: it asks whether the alleged injury can be plausibly linked to *this defendant's* conduct, not someone else's.

The Court's Memorandum Opinion and Order on Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 36) dismissed Group America from this action, noting that because Plaintiffs failed to make any allegations regarding Group America other than that "Doe himself

'worked as a canvasser' for Group America," the pleadings could not support any causal relationship between the alleged payment deficit and the alleged conduct by that defendant. *See* ECF No. 36 at 12.

Here, Plaintiffs' Second Amended Complaint is just as lacking as their first. While Plaintiffs now make at least a cursory attempt to plead more than one sentence regarding Group America, Plaintiffs did so without properly seeking leave of Court or consent from Defendants. For the reasons set forth in the motion to strike, *supra*, Group America should remain dismissed as a Defendant in this case and all allegations against it stricken from the Second Amended Complaint.

But even if the Court were to consider Plaintiffs' new allegations, those allegations would still be insufficient to establish traceability to Group America and confer Article III standing for Plaintiffs to include this Defendant. *In toto*, Plaintiffs' allegations against Group America in the Second Amended Complaint amount to: i) Doe's conclusory claim that he was "jointly employed" by America PAC and Group America; and ii) Doe's claims that Group America issued him paperwork related to canvassing work for which Doe does not dispute that he has been paid in full.

With respect to the first claim, Plaintiffs' own allegations undercut the proposition that Doe was "jointly employed" by America PAC and Group America, as Doe directly acknowledges that "Defendants represented to Plaintiff Doe that ***he was hired by and would be working for America PAC***." Sec. Amend. Compl. at 6, ¶ 24 (emphasis added). With respect to the second claim, Plaintiffs only allege that Group America was tangentially involved in issuing paperwork to Doe regarding canvassing work. They allege nothing to connect Group America to Plaintiff Pisor or any putative class member, nor do they allege anything about the only payments at issue here – petition referral payments. To that end, Plaintiffs do not allege that Group America created,

published, or was in any way involved with the petition, participated in determining eligibility or verification of submissions, processed submissions for payment, or issued any such payments.

Even taking Plaintiffs' allegations in the light most favorable to them, they have still failed to sufficiently plead any injury traceable to Group America. Accordingly, Plaintiffs lack Article III standing to assert any claims against it and Group America should remain (or again be) dismissed from this action.

> ### ii.  The Second Amended Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state claims upon which relief may be granted.

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (cleaned up).

As the Third Circuit has explained

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). Mere restatements of the elements of a claim are not entitled to the assumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted).

> **a.    Plaintiffs fail to state a claim for breach of contract or promissory estoppel because they do not allege facts that could plausibly support any unmet duty to pay.**

Under Federal Rule of Civil Procedure 9(c), general averments that conditions precedent have been satisfied are sufficient to survive dismissal for failure to state a claim. Fed. R. Civ. P. 9(c). But even where conditions precedent are generally alleged, Rule 9(c) does not dispense with the requirement that allegations be plausible on their face. *Twombly*, 550 U.S. at 555–57, 570; *Iqbal*, 556 U.S. at 678–79; *Connelly*, 809 F.3d at 787. Under Pennsylvania law, the nonoccurrence of a condition precedent means the promisor's duty does not arise, so neither a breach claim nor a promissory estoppel claim can lie. *See, e.g.*, *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 406, n.1 (3d Cir. 2007) (holding in breach of contract dispute that, notwithstanding Rule 9(c), "[a] complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim"); *Chand v. Merck & Co.*, No. CV 19-0286, 2019 WL 3387056, at *4 (E.D. Pa. July 26, 2019) (noting that Pennsylvania courts have refused to apply the promissory estoppel doctrine to contingent offers) (citation omitted); *see also Franklin Interiors v. Wall of Fame Mgmt. Co.*, 511 A.2d 761, 762 (Pa. 1986).

In ruling on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, the Court held that Plaintiffs may satisfy Rule 9(c) by generally alleging that conditions precedent to contract formation occurred. Defendants note the Court's ruling and do not re-urge their arguments on a point that the Court has already decided. Defendants do, however, raise a different issue—namely, that even in generally alleging satisfaction of conditions precedent, a plaintiff still must satisfy

Rule 12(b)(6)'s requirement that such averments be *plausible*. *See, e.g.*, *Connelly*, 809 F.3d at 787. Here, the pleadings negate a plausible finding of any satisfaction of conditions precedent.

Both breach of contract and promissory estoppel claims require a showing of a promise by the party to be charged, and satisfaction of those conditions by the plaintiff. *See, e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (breach of contract); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. 2005) (promissory estoppel). Here, Plaintiffs cannot plausibly allege—even generally—that all conditions precedent were satisfied. That is because entitlement to any referrer payment was contingent on events outside Plaintiffs control, that they would have no basis to know were satisfied. These include whether a person they referred signed the petition, was an Eligible Voter, and identified the Plaintiff in the petition's "referrer" field.

Plaintiffs do not dispute that these are requirements to earn referral payments. But the Second Amended Complaint pleads no non-conclusory facts that could plausibly support a finding that these events (outside of their control) occurred. It identifies no estimation of successful referrals or instances where Plaintiffs confirmed a verified Referee listed them as Referrers but nevertheless were not paid. Plaintiffs state only that they were "paid some referrals," and give wholly unsupported lump-sum estimates ($20,000 for Doe; $10,000 for Pisor) for what they believe they are owed. The vague and speculative nature of these claims – presupposing that several thousand verified individuals listed them as Referrers without any plausible basis for such a belief – underscores that Plaintiffs cannot plausibly allege that such conditions were satisfied. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (case should be dismissed under Rule 12(b)(6) if it "tenders naked assertions devoid of further factual enhancement.").

A contractual duty to pay does not arise absent satisfaction (or excuse) of the stated preconditions. *Chemtech*, 247 F. App'x at 406, n.1; *see also Bricklayers & Allied Craftworkers Loc. 1 of Pa/De v. ARB Constr., Inc.*, No. CV 13-3883, 2016 WL 1161528, at *6 (E.D. Pa. Mar. 23, 2016) ("A condition precedent is a 'condition which must occur before a duty to perform under a contract arises.'") (citations omitted) (cleaned up). And promissory estoppel cannot rest on a promise untethered from those contingencies. *Chand*, 2019 WL 3387056, at *4. Accordingly, Counts I and II should be dismissed as to all Defendants under Rule 12(b)(6).

> **b.**  **Plaintiffs' breach of contract and promissory estoppel claims should be dismissed as to Mr. Musk specifically because Plaintiffs plead no privity or clear personal promise, and no facts that could justify the extraordinary remedy of piercing the corporate veil.**

This lawsuit arises wholly out of America PAC's petition program. Yet Plaintiffs posit that Mr. Musk is *personally* liable for the difference between the referral payments they expected and what they actually received, on the theory that "Mr. Musk acted as an agent or officer" of America PAC. Sec. Amend. Compl. ¶ 24. This undermines rather than supports Plaintiffs' attempt to hold Mr. Musk personally liable.

America PAC is a Virginia nonstock corporation in good standing (Entity ID 11705403; formed June 4, 2024), with a registered agent in Richmond, Virginia.[2] America PAC's publicly available corporate filings with the Virginia State Corporations Commission demonstrate that Mr. Musk is not, in fact, an officer of America PAC and Plaintiffs' legally conclusory assertion that Mr. Musk is an "agent" of America PAC is not entitled to a presumption of truth. *See, e.g.*, *Iqbal*,

---

[2] America PAC's officers and directors are publicly viewable by searching the Virginia State Corporations Commission website, https://cis.scc.virginia.gov/EntitySearch/Index, for entity name "America PAC" or entity ID 11705403.

556 U.S. at 663 (in deciding motion to dismiss under Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

However, even if Mr. Musk *were* an "agent or officer" of America PAC, "[i]t is black letter law in Pennsylvania that a corporation is a separate and distinct entity from its officers or shareholders," and "[i]n a breach of contract action, the general rule is that a corporate officer … may not ordinarily be held personally liable."[3] *In re Wolf*, 556 B.R. 676, 686–87 (Bankr. E.D. Pa. 2016), *aff'd*, 573 B.R. 179 (E.D. Pa. 2017), *aff'd*, 739 F. App'x 165 (3d Cir. 2018). In Pennsylvania and the Third Circuit, courts begin with a "strong presumption" in favor of corporate separateness and "any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895–96 (Pa. 1995); *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967) (citations omitted) (cleaned up).

In Pennsylvania, piercing the corporate veil is "an extraordinary remedy and will only be employed in exceptional circumstances." *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 725 (E.D. Pa. 2014); *Labar Vill. Cmty. Ass'n, Inc. v. VFG-LaBar, L.L.C.*, No. CV 3:08-1010, 2008 WL 11367896, at *3 (M.D. Pa. Aug. 1, 2008). Courts in the Third Circuit only pierce the corporate veil where the entity is "little more than a legal fiction," assessed through factors such as undercapitalization, failure to observe corporate formalities, siphoning of funds, nonfunctioning officers, and use of the corporation as a façade. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001); *Lumax*, 669 A.2d at 895–96. "Such a burden is notoriously difficult for plaintiffs to meet." *Pearson*, 247 F.3d at 485.

---

[3] Moreover, to the extent a plaintiff invokes officer "participation" to reach an individual, that doctrine sounds in tort and does not impose personal liability on corporate contracts. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978).

The Second Amended Complaint fails to plead any facts that could justify piercing the corporate veil here. It alleges no undercapitalization, commingling, failure to observe formalities, siphoning of funds, nonfunctioning officers, absence of records, or use of any entity as a façade to perpetrate fraud or injustice. Plaintiffs do not allege anything in the Second Amended Complaint that ties Mr. Musk to any personal contractual obligation, or to a clear, definite personal promise to pay Plaintiffs. The pleading only alleges that Mr. Musk founded America PAC (Sec. Amend. Compl. at 3, ¶ 13) and that he promoted the Program on X (pages 4–5, ¶¶ 19–21; image at page 5). Those assertions, taken in the light most favorable to Plaintiffs, do not allege privity, a personal guarantee, or words of personal assent by Mr. Musk. To the contrary, Plaintiffs' acknowledgment that Mr. Musk's actions were "on behalf of America PAC" reinforces the corporate separateness that exists here.

Stated plainly, Mr. Musk was not an "agent or officer" of America PAC.  However, even if he were, Pennsylvania law is clear that no liability can be ascribed to him in his personal capacity because Plaintiffs have failed to plead any facts sufficient to meet the high burden of piercing the corporate veil in this State. Because Plaintiffs allege no personal undertaking by Mr. Musk and no well-pled veil-piercing facts, Counts I (breach of contract) and II (promissory estoppel) should be dismissed with prejudice as to Mr. Musk.

> ### c. Plaintiffs' breach of contract and promissory estoppel claims should be dismissed as to Group America because Plaintiffs failed to plead any contractual obligation or clear, definite promise by Group America to pay any Program amounts.

For the same reasons Plaintiffs lack standing to sue Group America, Plaintiffs' pleading deficiencies also require dismissal of Counts I and II against Group America under Rule 12(b)(6). Plaintiffs plead no enforceable agreement with, or clear and definite promise by, Group America to pay Plaintiffs for any referrals. On Plaintiffs' own allegations, the offer/eligibility/verification

for signature/referral payments is attributed to America PAC. The only facts pled about Group America concern canvassing administration—Doe's W-2 and check issuance for canvassing, a conclusory "joint employer" label, and training/check-ins—not any role in creating the Petition program, offering it, determining eligibility, verifying referrer/referee submissions, deciding whether particular submissions would be paid, or issuing/approving referral payments. Those allegations do not state breach of contract because they identify no privity and no contractual undertaking by Group America to pay Plaintiffs any referral fees, and they do not state promissory estoppel because they identify no relevant promise *by* Group America. Accordingly, Counts I and II should therefore be dismissed with prejudice as to Group America.

### d. Doe's WPCL claim should be dismissed for failure to state a claim.

The WPCL, 43 P.S. § 260.1, *et seq.*, is a Pennsylvania employment law that provides employees a tool to recover unpaid wages from their employers. The WPCL does not apply to all types of working relationships, or even to all types of income that could be had in the context of an employer-employee relationship. The foundational elements for a plausible claim under the WPCL are that i) an employer-employee relationship must have actually existed between the parties; and ii) the earnings at issue must have been "wages" within the meaning of the WPCL. *See, e.g., Morin v. Brassington*, 2005 PA Super 107, ¶ 15, 871 A.2d 844, 850 (Pa. Super. Ct. 2005); *Tomlinson v. Checkpoint Sys., Inc.*, No. CIV.A. 06-2205, 2008 WL 219217, at *1 (E.D. Pa. Jan. 25, 2008); *Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 798 (3d Cir. 2010); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 956 (Pa. Super. 2011); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

**i.  Doe's alleged referral fees were not "wages" under the WPCL.**

The WPCL defines "wages" as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation," including "fringe benefits or wage supplements" like bonuses when contractually promised. 43 P.S. § 260.2a. While this definition has been interpreted to encompass various forms of compensation, courts still require that there be a nexus between the benefit received and the person's employment for payments of any kind to constitute "wages" under the WPCL. *Braun*, 24 A.3d at 956 (wages are compensation "offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment"); *Weldon*, 896 F.2d at 801 (WPCL enforces only contractual wage obligations). Payments lacking an employment-specific nexus or contractual basis fall outside the WPCL's scope. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 62-63 (Pa. Super. 2000); *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1579-80 (E.D. Pa. 1985).

In *Kafando v. Erie Ceramic Arts Co.*, a factory worker sought to recover a gainsharing bonus he believed he was entitled to under the WPCL, asserting it constituted a wage earned during his employment. 764 A.2d at 61. The employer's program, however, tied bonuses to company profits, not individual effort, and required employment at distribution. *Id*. at 61-62. Because the bonus depended on corporate performance and lacked a contractual guarantee for payment, the court dismissed the claim, finding it was not a wage due to its disconnection from employee services. *Id*. at 62-63.

Likewise, in *Sendi v. NCR Comten, Inc.*, a regional sales director sought payment under the WPCL for commissions on sales initiated before his resignation, arguing his prior efforts warranted compensation. 619 F. Supp. at 1578. The employer's compensation plan awarded commissions only to employees at payment, and no contract promised post-termination pay. *Id*. at

1578-79. The court dismissed the claim, ruling the commissions were not wages because the plaintiff lacked contractual entitlement after leaving employment, as the WPCL protects only employee compensation tied to employment agreements. *Id*. at 1579-80.

Here, Doe's WPCL claim fails as to all Defendants because the referral fees were not "wages"—they were incentive payments open to registered Pennsylvania voters, regardless of whether they were an employee of any Defendant. As the Second Amended Complaint admits, America PAC offered $47 or $100 per successful petition referral to "any registered voter in Pennsylvania," a group that ostensibly includes even Doe's co-Plaintiff Bobbi Pisor, who does not claim to have been an employee of Defendants. The referral payments were advertised through X and a public website, requiring only voter referrals, not employment or canvassing duties. Doe does not allege the fees were exclusive to employees, nor has he pled that they were in any way tied to any alleged employment relationship.

Doe's claim improperly stretches the WPCL beyond its statutory bounds, seeking to convert a petition signature incentive into labor-law-protected employment compensation. The WPCL governs only payments tied to employment through contractual obligations. *Braun*, 24 A.3d at 956; *Kafando* 764 A.2d at 61. Doe cannot satisfy this standard, as he alleges no contract or employment-specific conditions for the referral payments. Doe's referral efforts—like those of any program participant—do not render the fees wages absent an employment nexus and accepting Doe's theory would extend WPCL protections to all manner of non-employment settings, undermining the entire purpose of the WPCL.

Because the referral payments at issue lack any employment-specific nexus or contractual foundation required by the WPCL, they do not constitute "wages" under the WPCL and must be dismissed under that statute.

### ii. Plaintiff Doe has not pled an employer–employee relationship with Mr. Musk or Group America.

Notwithstanding the fact the referral fees are not "wages" under the WPCL, Plaintiff Doe has not even properly pled that he had any employer-employee relationship with Mr. Musk or Group America. While the WPCL defines "employers" as entities or individuals, including their agents and officers, "employing any person in this Commonwealth," it does not further define what "employing" means under the statute. 43 P.S. § 260.2a. When determining whether a worker is an employee under the WPCL, Pennsylvania courts apply a multifactor test that includes consideration of the following factors:

> the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

*Morin,* 871 A.2d at 850*; Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 320 (3d Cir. 2016).

Though no one factor is dispositive, courts have consistently recognized that the right to control the manner in which work is performed is the most significant and "paramount" consideration. *Morin*, 871 A.2d at 850*; Williams*, 837 F.3d 314 at 320; *Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 3992960, at *9 (M.D. Pa. Sept. 4, 2012) ("The most important of these factors, for our purposes, is the right of an individual to control the manner that another's work is to be accomplished."). Even when an employer-employee relationship exists, the WPCL does not cover conduct by agents and officers of an employer unless the individual was an "active decision maker" in employment or wage decisions. *See Belcufine v. Aloe*, 112 F.3d 633, 635 (3d Cir. 1997) (dismissing WPCL claim against officers absent specific allegations of involvement); *Mohney v. McClure*, 568 A.2d 682, 686 (Pa. Super. 1990), *aff'd*, 604 A.2d 1021 (Pa. 1992) (agent liability

under the WPCL is premised on the person being held liable being an active decision maker in the context of deciding not to pay the employees).

A person is not an employee under the WPCL if the alleged employer lacks control over their work and the relationship lacks basic indicia of employment, such as supervision, contractual terms, or integration into the employer's business. In *Morin*, a manager operated a convenience store under an oral agreement to receive minimum wage payments upon the store owner's retirement from the owner's separate full-time job. 871 A.2d at 847. For eleven years, the manager autonomously ran the store—setting his own hours, hiring staff, making sales, ordering supplies, and establishing store rules—while living above the store for nominal rent. *Id*. at 848, 850. The store owner, preoccupied with his primary job, visited sporadically, retained only the right to terminate the manager, and exercised no control over daily operations. *Id*. When the owner failed to pay, the manager sued, claiming employee status under the WPCL. *Id*. The trial court denied WPCL penalties, finding the manager was not an employee. *Id*. On appeal, the Superior Court affirmed, applying the multifactor test to hold that the manager was an independent contractor, not an employee, primarily because of the store owner's lack of control over the manager's work methods. *Id*. at 850. The court also noted that the absence of an employment contract and the manager's use of his own equipment as supporting the conclusion that no employer-employee relationship existed. *Id*.

Similarly, in *Tomlinson*, a consultant, initially hired by a security technology firm incorporated in Pennsylvania but based in New Jersey, negotiated a full-time senior director position. 2008 WL 219217 at *1-2. The firm offered the consultant a role via a letter promising a contract with a nine-month severance package. *Id*. at *2. The consultant worked primarily in New Jersey, with occasional telecommuting from Pennsylvania, setting his own schedule and using his

own resources. *Id.* at *1, *10. Despite starting work and being offered a written employment contract, the consultant never received or executed it. *Id.* The firm then terminated the consultant during a layoff and denied him severance. *Id.* at *3. The consultant sued under the WPCL, however, the district court granted summary judgment to the firm, dismissing the WPCL claim because the consultant was not a Pennsylvania-based employee entitled to WPCL protections. *Id.* at *9-10. The court reasoned that the firm did not control the consultant's work methods, no contract existed, and incidental telecommuting did not establish a Pennsylvania-based relationship. *Id.* at *10.

Doe has not pled facts that could support the existence of an employer-employee relationship with Mr. Musk or Group America. Doe's sole claims against Group America are that he was "jointly employed" by them and America PAC and that they provided him with some documentation related to his work. Doe has pled nothing about Group America's involvement, control, or relationship to America PAC, or that they engaged in any behavior consistent with that of a true employer. Without facts showing control or hallmarks of employment, like supervision or contracts, Doe cannot establish that any employment relationship existed with Group America. *See Morin*, 871 A.2d at 850; *Williams*, 837 F.3d at 320; *Green v. Golla Ctr. For Plastic Surgery, P.C.*, 2019 WL 1083688, at *3 (W.D. Pa. 2019).

Doe's WPCL claim against Mr. Musk similarly fails. Plaintiff has failed to plead any facts alleging that Mr. Musk had any involvement in his alleged employment or wage decisions. While Doe alleges that Mr. Musk was an "agent or officer" of America PAC and Group America, that is not sufficient to state a plausible claim against him in his individual capacity. Rather, as *Belcufine* and *Mohney* make clear, an individual officer or agent can only be liable under the WPCL if they had decision-making authority over employment and wage-related matters. Doe has pled no such

facts here, instead relying solely on Mr. Musk's X post publicizing the program—an allegation

that has no relevance to WPCL liability. Absent any factual basis to conclude that Mr. Musk had

control over any wage decisions, the putative WPCL claim against Mr. Musk fails under 12(b)(6).

Because Plaintiff Doe has not pled facts sufficient to establish an employer-employee

relationship with any Defendant, his WPCL claim fails and should be dismissed.

## IV.    <u>Conclusion</u>

For the foregoing reasons, all unauthorized Defendants, claims, and allegations should be

stricken from the Second Amended Complaint and the Second Amended Complaint should be

dismissed in its entirety.

Date: October 3, 2025

<div style="margin-left:40%">

*/s/ Matthew H. Haverstick*
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com

*/s/ Anne Marie Mackin*
Chris K. Gober*
Texas State Bar No. 24048499
Andy Taylor*
Texas State Bar No. 19727600
Anne Marie Mackin*
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Lex Politica PLLC
#129 7415 SW Parkway
Bldg. 6, Ste. 500
Austin, Texas 78735
Telephone: (512) 354-1785
cgober@lexpolitica.com
ataylor@ataylorlaw.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

</div>

**Attorneys for Defendants**

*\*Admitted* pro hac vice